STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. THOMAS CHOICE, DEFENDANT-RESPONDENT.

Argued September 25, 1984—Decided January 16, 1985.

*Linda K. Calloway,* Deputy Attorney General, argued the cause for appellant (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney).

*John DeMassi,* Designated Counsel, argued the cause for respondent (*Joseph H. Rodriguez,* Public Defender, attorney).

The opinion of the Court was delivered by

WILENTZ, C.J.

We reverse the Appellate Division and reinstate the conviction and sentence rendered in the trial court.

Defendant, Thomas Choice, was tried and convicted of the murder of his former wife.[1] His defense was an alibi—he was

---

[1]The facts are set forth in the majority and dissenting opinions of the Appellate Division.

somewhere else when decedent was killed. The contrary evidence was that defendant, rebuffed in his attempts to resume an intimate relationship with his former wife, surprised her on the porch of her mother's home and shot her twice in the head. At no point in the case was there any contention by anyone that the evidence could rationally accommodate a manslaughter verdict. No request so to charge was made. On appeal to the Appellate Division, defendant claimed, for the first time, as plain error, that our decision in *State v. Powell*, 84 *N.J.* 305 (1980), required the trial court to charge manslaughter *sua sponte*, there being sufficient evidence, according to defendant, to support such a charge; defendant further claimed that failure to do so was reversible error.

The Appellate Division, one judge dissenting, agreed with these contentions and reversed, remanding the matter for a new trial. The basic difference between the majority and the dissent was their views of the evidence, the majority concluding that the evidence could rationally support a manslaughter charge (*i.e.*, that the homicide resulted from an overpowering passion caused by a reasonable provocation), the dissent, that it could not. The more specific point of difference related to the existence or not of any evidence that decedent's conduct constituted "reasonable provocation." Both the majority and the dissent implicitly assumed that if the evidence could rationally support a manslaughter charge, the failure of the trial court to give one, even though none was requested, called for reversal on appeal.[2]

We need not reach the factual issue that divided the Appellate Division since *Powell* calls for reversal of the judgment

---

[2]The discussion in the dissenting opinion, however, by pointing out some of the problems that would have arisen had such a charge been given, may be read to imply some difference of opinion with the broadly stated duty (found in *Powell*) of the trial court to give such a charge even where rationally supported by the evidence.

below on different grounds. In *Powell,* the defendant at trial, as here, claimed an alibi. The State had introduced several contradictory statements by the defendant, one of which not only put defendant with decedent at the time and place of the homicide, but clearly suggested the possibility of a passion/provocation manslaughter.[3] We held that the fact that defendant's position at trial was totally inconsistent with a manslaughter verdict did not deprive him of the right to have that lesser offense submitted to the jury, and that it was reversible error on the part of the trial court *upon request,* to refuse to charge such lesser offense.[4] In dictum we noted that "where the facts *clearly indicate* the possibility that the crime was manslaughter based upon either provocation/passion or imperfect self-defense, we see no reason why the trial judge should not also be obliged, even without any request being made, so to charge." *Powell, supra,* 84 *N.J.* at 318 (emphasis supplied). Our conclusion was based on our belief that the public interest may require that a particular charge be given to the jury, where the facts rationally support such a charge, even though neither the defense nor the prosecution has requested

---

[3]A portion of the statement was that decedent, Powell's "common-law" wife, after quarreling with Powell, lunged for his revolver, got it, following which there was a struggle for the gun. That statement, along with other circumstances, persuaded this Court that a jury could rationally find that Powell, reasonably believing his common-law wife intended to kill him, became enraged and committed the homicide in that fit of passion.

[4]In *Powell,* a request for a manslaughter charge had been made and our holding was based on that fact. ("Although a manslaughter instruction is usually requested by a defendant, *as was the case here," State v. Powell, supra,* 84 *N.J.* at 317 (emphasis supplied).) The discussion, 84 *N.J.* on page 318–19 is dictum stimulated by the *claim* that no request for a manslaughter instruction had been made. ("Since it is *claimed* here that no request for a manslaughter charge was made (or, if made was thereafter withdrawn) we deem it appropriate to use this occasion to set forth our view of the duty of a trial court in a murder case to charge the applicable law to the jury based upon the facts *regardless* of what requests counsel may make." *Id.,* 84 *N.J.* at 318 (first emphasis supplied).)

it; that enforcement of the criminal law is too important to be controlled completely by the contentions of the adversaries; and that the court has an obligation to see to it that the jury, as the representative of the public, is given all of the facts *and* all of the possible offenses that might reasonably be found from such facts. That dictum, however, was limited to a statement of the *trial court's* duty. The limitation was explicit: "We express no opinion here as to the *effect,* on appeal, of a failure so to charge where no request has been made. Rather we shall state the *duty* of the trial court when similar circumstances present themselves." *Id.*[5]

■ Our review of the record in this matter shows that whatever else in this case may be murky, it is *clear* that the facts here do *not* "clearly indicate the possibility that the crime was manslaughter based upon ... provocation/passion...." *Powell,* 84 *N.J.* at 318. The trial court does not, by virtue of *Powell,* have the obligation on its own meticulously to sift through the entire record in every murder trial to see if some combination of facts and inferences might rationally sustain a manslaughter charge. It is only when the facts "clearly indicate" the appropriateness of that charge that the duty of the trial court arises. That is what was referred to in *Powell,* and those were the facts as they existed in *Powell.* Such clarity being absent here and there being no request so to charge, we reverse the judgment of the Appellate Division and reinstate the conviction and sentence of the trial court. We do not pass

---

[5]Nowhere does *Powell* imply that whenever there is a prosecution for murder, a manslaughter charge must automatically be given. *See Powell,* 84 *N.J.* at 316 n. 12. ("We do not advocate use of such an automatic rule in this State.") To that extent, the opinion is consistent with the Code of Criminal Justice, which did not apply in *Powell,* the offense having predated the effective date of the Act, *see N.J.S.A.* 2C:1–8(e): "Submission of Included Offense to Jury. The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense."

on any of the other issues before the Appellate Division since the matter is before us solely as a result of the dissent, the only issue there addressed being the failure of the trial court to charge manslaughter *sua sponte*.

 Some further clarification of *Powell* seems necessary. The dissent below points out that had defendant requested a manslaughter charge, and had the State been aware that the case would proceed on that theory as well as on the alibi offered, there were various matters that the State might have wanted to bring to the jury's attention relevant to the passion/provocation basis underlying the manslaughter charge but totally irrelevant to the charge of murder (matters, in fact, that the judge excluded, and apparently properly so, from the trial). Without agreeing that the matters mentioned by the dissent would have been admissible had the manslaughter theory been part of the case from the beginning, we nevertheless conclude that the underlying point of the dissent is well taken, and it suggests limitations on the broad language of our *Powell* dictum. It suggests that where the manslaughter charge, if given *sua sponte* by the court, would surprise the prosecution (or the defense), that unrequested charge might be inappropriate; at the very least its use may require that opportunity be given to both sides to address the new issue injected by the court, including an opportunity to present further evidence. Furthermore, the absence of such a request by the defendant may reflect not the willingness to gamble between a murder conviction and an acquittal (the situation we stressed in the *Powell* dictum, 84 *N.J.* at 319) but rather a conclusion on the part of the defense that the facts that might come out, relevant to the manslaughter charge, would make a conviction of *murder* much more likely. While the public interest in giving the jury all of the facts and the option to choose from all of the consequent possible offenses may prevail over counsel's interest (the gambling strategy mentioned in *Powell*), that may *not*

be the case where the injection of that passion/provocation issue by the court will enhance the risk of a murder conviction. In the former case, defendant is concerned that by positing the manslaughter option, the court will allow a jury that might have acquitted defendant to choose a manslaughter conviction. In the latter case, defendant's concern is not that the introduction of the manslaughter instruction might preempt the possibility of acquittal, but that it will—because of the evidence it will engender—assure conviction of murder. The dissent suggests that that may very well have been the case here.

The possible complexities at the trial level in a criminal matter that may arise from a charge not requested by any of the parties were not examined in our dictum in *Powell*. We sought there to point out only that the interests of the parties— prosecution and defense—as reflected in the decisions of their counsel were not the only interests involved in a criminal matter; that the public interest, especially in a criminal case, may go well beyond the interests of the parties. That dictum does not suggest the many complexities, some of which are suggested here, that may result when the court charges manslaughter without being so requested. For the moment we leave to the trial court the balancing of these various interests.

For the reasons set forth above, the judgment of the Appellate Division is reversed and the conviction and sentence imposed by the trial court reinstated.

*For reversal*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIKER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*For affirmance*—None.