225 N.J. Super. 596 (1988)
543 A.2d 105
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM BISHOP, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 11, 1988.
Decided June 15, 1988.
*597 Before Judges FURMAN, LONG and SCALERA.
Al Glimis, Assistant Public Defender, argued the cause for appellant (Alfred A. Slocum, Public Defender, attorney, Al Glimis, of counsel and on the brief).
Julie Davidson, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General, attorney, Julie Davidson, of counsel and on the letter brief).
The opinion of the court was delivered by SCALERA, J.A.D.
Defendant appeals from his convictions for murder, contrary to N.J.S.A. 2C:11-3 a(1) and (2) (count 1) and possession of a weapon for an unlawful purpose, contrary to N.J.S.A. 2C:39-4 d (count 2). After the conviction on count 2 was merged, he was sentenced to life imprisonment with a 30 year period of parole ineligibility and ordered to pay $25 to the Violent Crimes Compensation Board.
The evidence produced at trial indicated that on July 15, 1984, twenty-four year old Frank Randolph (Frank) was fatally stabbed during a fight involving numerous participants which erupted outside of the Prospect Village apartments in Trenton. An outdoor birthday party was being given there by Donald Wilson (Wilson) at his mother's home for his four year old daughter. Several members of the victim's family were invited *598 guests. Apparently, Darryl McKinney (McKinney), the nephew of defendant William Bishop, had previously fathered a child with Darlene Randolph (Darlene), the wife of Harvey Randolph, the victim's brother. McKinney and Harvey Randolph (Harvey) had had several arguments regarding Darlene in the past, including a fight just two weeks prior to this incident.
Frank was one of the guests who attended the Wilson party that day. McKinney was hanging around outside of his apartment located in the same complex, with Maurice Bird (Reecie). He called Frank over from across the lawn and after they exchanged some heated words, eventually a fight ensued. It then escalated into a general melee involving some 15 to 20 persons from the party and neighborhood.
Anthony Shields (Shields), the victim's cousin, saw the fight start and ran to his cousin Willie Randolph (Willie) for help. By the time Willie arrived at the fight scene it had moved from the lawn area into the street. Willie was the only witness to the actual stabbing of the victim by the defendant. He recounted that as he and Shields approached, people began fighting with them thereby keeping them from reaching Frank. Meanwhile other persons were "jumping" and beating Frank as he was on the ground. Willie saw Frank get back onto his feet and also saw the defendant with a knife, standing within the group that was kicking Frank. He described the incident as follows:
There was people everywhere. There were people beating him, fighting him. And, this guy approached him with the knife, and I was trying to get to the guy before the guy got to him. Any everybody was hollering, he's got a knife, but Frank was weak and people had beat him so bad he couldn't even hardly stand up. This guy just stuck him.
Willie also testified that he had seen the defendant standing to the side of the fight for about ten to fifteen minutes before he joined in. After the defendant stabbed Frank, Willie spun him around and kicked him in the chest causing him to fall to the ground. The knife fell out of his hand but the defendant retrieved it.
*599 Anthony Randolph (Anthony), another cousin of the victim, saw Willie kick the defendant to the ground and viewed the knife fall out of his hand. Anthony's girlfriend had yelled a warning to him about the weapon. He testified that the defendant had actually chased after him, "sticking" [him] with the knife." Robert Carl Randolph, also a cousin, saw the defendant come from a nearby house with a piece of metal in his hand, which he assumed was a knife. He and another man attempted to restrain the defendant as he came off the porch because he appeared to be "out of control." However, defendant broke loose from their hold and entered the fray. Wilson also saw the defendant run from the porch of the house where he was standing and get into the fight at a time when Frank was being pummeled by McKinney and Reecie.
After he was stabbed, Frank fell down along side a parked car. Several of his cousins picked him up and ultimately took him to Mercer County Hospital where he was operated on but he died several hours later.
As a State's witness, McKinney recounted the events leading up to the incident differently. While he and Reecie were walking towards a store on an errand for his mother, Joyce McKinney, they were approached by Frank whom he supposedly had not met previously. Frank complained about McKinney's actions concerning his brother Harvey and his wife Darlene. As a result McKinney shoved him and Frank responded by punching him in the mouth, knocking McKinney to the ground. McKinney got up and was then struck again from behind by someone else, causing him to fall to the ground again. Reecie then struck Frank Randolph in the face and they both fell down wrestling. Other people from the party then joined the fight. McKinney was getting kicked in the head and body while he was on the ground. He remembers his uncle, William Bishop, trying to help him up off the ground during the fight. The whole "brawl" lasted only for "minutes." The defendant's sister, testified that she thought that defendant was trying to help Reecie during the fight that took place.
*600 The defendant elected to rest without producing any witnesses and also not to testify at trial.
On appeal he asserts,
Point I: The trial court committed reversible error in denying defendant's request to instruct the jury on aggravated manslaughter (N.J.S.A. 2C:11-4(a)), reckless manslaughter (N.J.S.A. 2C:11-4(b)(1)), and manslaughter based on provocation and passion (N.J.S.A. 2C:11-4(b)(2)).
Point II: The trial court erred in denying defendant's motion for a mistrial when a police detective stated that a mug shot array admitted into evidence had "criminal numbers" affixed to them.
Point III: Defendant's sentence is manifestly excessive and unduly punitive.
Defendant was indicted solely for having purposely or knowingly caused the death or serious bodily injury resulting in the victim's death. Upon conclusion of the case, defense counsel requested that the jury also be instructed regarding the lesser included offenses of aggravated manslaughter and manslaughter. The State objected and the trial judge declined to give such instructions explaining that the evidence indicated only that "Bishop was going toward the deceased in a fast manner. This witness was behind him. Mr. Bishop ran up to him and stabbed him. That's purposeful. That's knowing. I don't see the recklessness." He therefore charged only purposeful and knowing murder.
Defendant asserts that the evidence patently indicated a rational basis for the return of verdicts of aggravated manslaughter or manslaughter, thus depriving him of due process. U.S. Const., Amends. V, XIV; N.J. Const. (1947), Art. I, par. 1, 9, 10. Specifically, he contends that a verdict based on the lesser included offenses of aggravated manslaughter, N.J.S.A. 2C:11-4(a), reckless manslaughter, N.J.S.A. 2C:11-4(b)(1), or manslaughter based on provocation and passion, N.J.S.A. 2C:11-4(b)(2) were supportable by evidence produced at trial by the State. He argues that the testimony and reasonable inferences drawn therefrom were sufficient to establish that when defendant approached the crowd he was mentally "out of control," as evidenced by the fact that he broke loose from efforts to restrain him. Further, defendant asserts that he was *601 involved in the brawl, fighting with an unidentified person other than the victim and waving a knife around. Although there was evidence to indicate that he was seen swinging the knife in a forceful upward motion at the victim the State produced only circumstantial evidence of his precise mental condition or state of mind at the time he did so. It was established that the defendant had a close relationship with his nephew Darryl McKinney. Accordingly, the jury could consider that because his nephew was endangered, the defendant reacted by entering the fight. Moreover, the entire stabbing incident occurred during a "chaotic" brawl scene which escalated into a mob fight of 15 to 20 people. The participants were obviously angry, with tempers escalating within a very short period of time. Such a scenario would have permitted a reasonable jury to conclude that defendant had acted in a reckless manner or out of his concern for his nephew's welfare, constituting a sufficient provocation for the stabbing death. We agree.
Defendant was indicted for murder contrary to N.J.S.A. 2C:11-3 a(1) and (2) which provides that criminal homicide constitutes murder when the actor purposely or knowingly causes death or serious bodily injury resulting in death. However, homicide constitutes only aggravated manslaughter when the actor recklessly causes death "under circumstances manifesting extreme indifference to human life." N.J.S.A. 2C:11-4(a). Moreover, such a homicide constitutes plain manslaughter when it is committed "recklessly" or "in the heat of passion resulting from a reasonable provocation." N.J.S.A. 2C:11-4(b). See the further discussion of these differences in State v. Sanchez, 224 N.J. Super. 231, 240-42 (App.Div. 1988). Both reckless manslaughter and aggravated manslaughter are lesser included offenses of purposeful or knowing murder and differ from murder only in that they require a less culpable state. 224 N.J. Super. at 240-41.
However, a court is not required to charge a lesser included offense unless there exists a "rational basis" in the *602 evidence for a verdict convicting the defendant of such an included offense. N.J.S.A. 2C:1-8(e). State v. Sinclair, 49 N.J. 525, 540 (1967). Thus the issue necessarily turns on the evidence produced in a particular case. Cf. Cannel, Title 2C, Comments N.J.S. 2C:1-8(d) at 41. It is clear that where evidence which would support a verdict reducing a crime to a lesser included offense does exist such a charge must be given. State v. Choice, 98 N.J. 295, 296-299 (1985); State v. Powell, 84 N.J. 305, 317 (1980); State v. Vujosevic, 198 N.J. Super. 435, 445 (App.Div. 1985), certif. den. 101 N.J. 247 (1985). As stated in State v. Sinclair, supra,
To force the jury to choose on the evidence in the case between first degree murder and acquittal raises the possibility that the defendants might have been convicted of first degree murder though their guilt was of a lesser degree. [49 N.J. at 543].
The United States Supreme Court has also recognized that when a defendant is clearly guilty of some offense and the evidence warrants a conviction of a lesser offense than the one charged, there is a substantial risk that a jury may return a guilty verdict notwithstanding doubt as to proof of the greater offense, rather than allow the defendant to be acquitted. Beck v. Alabama, 447 U.S. 625, 634, 100 S.Ct. 2382, 2388, 65 L.Ed.2d 392, 401 (1980).
However, as noted such a charge should not be given unless there is a rational basis for a verdict on the included offense. State v. Crisantos (Arriagas), 102 N.J. 265, 275-276 (1986); State v. Saulnier, 63 N.J. 199, 206-207 (1973); State v. Bohannan, 206 N.J. Super. 646, 649 (App.Div. 1986). Otherwise an improper charge invites a jury verdict based on sheer speculation or compromise. State v. Sinclair, supra, 49 N.J. at 540; State v. Selby, 183 N.J. Super. 273, 280 (App.Div. 1981). The decision whether to deliver such an instruction rests primarily with the trial judge who must determine whether such a manslaughter instruction is appropriate in light of the facts of a particular case. State v. Powell, supra, 84 N.J. at 316. Where the evidence clearly raises an issue justifying a finding it must *603 be charged even absent a request. State v. Choice, supra, 98 N.J. at 299; State v. Powell, supra, 84 N.J. at 318. Where, as here, the defendant specifically requests such a charge, the threshhold for determining whether a rational basis exists is relatively lower. State v. Crisantos, supra, 102 N.J. at 278.
In Crisantos,[1] the Supreme Court framed this principle thusly, that it is error not to charge the lesser included offense "if on the evidence it would not be idle to have the jury decide" and "it is enough that the evidence [supporting the lesser included offense charge] leaves room for dispute...."
In State v. Powell, we noted that in a majority of jurisdictions, "a scintilla of evidence" is all that is necessary to warrant a manslaughter charge when requested by the defendant. 84 N.J. at 316 n. 12. To the extent that Powell is read as supporting the "scintilla" test, the Code formulation is somewhat more restrictive. Nevertheless, the rational-basis test of the Code imposes a low threshold, as did the pre-Code law, State v. Sinclair, supra, 49 N.J. at 540, for permitting a charge on a lesser-included offense. When the lesser-included offense charge is requested by a defendant, as in this case, the trial court is obligated in view of defendant's interest, to examine the record thoroughly to determine if the rational-basis standard has been satisfied. See State v. Powell, supra, 84 N.J. at 318-19; State v. Choice, 98 N.J. 295, 298-299 (1985). [102 N.J. at 278].
Unquestionably the State had the burden to prove that the defendant committed the murder either purposefully or knowingly. Failing in that regard, in light of the evidence adduced the State would then be required to prove that he did so recklessly with extreme indifference to human life. If it did not do so to the jury's satisfaction, the homicide might then only amount to simple manslaughter. In such instance a defendant is not required to prove provocation. Rather, again it is the State which must prove beyond a reasonable doubt that defendant did not kill recklessly or as a result of provocation or in the heat of passion. State v. Grunow, 102 N.J. 133, 145 (1986).
*604 In this matter, the trial judge erroneously refused to permit the jury to consider the manslaughter verdicts. He sought to distinguish the facts of State v. Powell on the grounds that there was sufficient evidence in that case from which a jury could rationally find that defendant had reasonably believed that the deceased intended to kill him, became enraged and committed the homicide. In doing so, he said,
The evidence establishes that there is one decision the jury should have to make in this case, and that is whether or not the defendant committed the stabbing in question, or whether he did it purposefully or knowingly. There is no evidence before this jury suggesting recklessness, heat of passion or reasonable provocation. For me to interject it would only be confusing and misleading, and possibly be responsible for an improper verdict.
As previously indicated, we do not agree. Here the evidence produced came from witnesses which only viewed parts of the general melee. Eventually 15 or 20 persons, variously aligned with the two factions, joined into the fray, which soon became a "free-for-all." There was conflicting evidence whether defendant had quietly stood by and watched the fight without becoming involved until he ran off of the porch directly toward the victim and stabbed him for no apparent reason. There was other evidence suggesting that he may have joined the fight because he saw his nephew being beaten by various adversaries and went to his assistance. There was also evidence that defendant's decision to join the fight was accompanied by a mental condition described as being "out of control" and that during the fight he attempted to stab at least one other person, either before or after he had stabbed the victim.
In our view such evidence would lend support for possible verdicts finding him guilty of either aggravated manslaughter or manslaughter as we have defined. In other words, absent more direct evidence of defendant's state of mind when he stabbed the victim, the jury might well have concluded that he had acted recklessly by becoming engaged in the brawl at all and by utilizing and waving a knife around when no one else in the fight possessed a weapon, especially when one considers *605 that the victim and the defendant had never even spoken to each other before the stabbing. Thus, his behavior, prior to approaching the victim, might well have been indicative of a reckless state of mind at the time he stabbed him. It is true that such evidence might have supported the conclusion that he had acted purposefully or knowingly, but the fact that the incident took place in the midst of an unruly brawl, with a large group of people fighting and shouting, undermines the purposeful or knowing state of mind which the State contends that defendant possessed when he committed the homicide. State v. Grunow, supra, 102 N.J. at 143. In sum, the posture of the evidence did provide a rational basis for the jury to infer that the defendant had acted recklessly. Cf. State v. Bowens, 205 N.J. Super. 548 (App.Div. 1985), aff'd 108 N.J. 622 (1987). Whether that recklessness was accompanied by extreme indifference to human life was peculiarly for the jury to determine. Defense counsel conceded at oral argument that the facts supporting the lesser charges do not support an absolute defense. N.J.S.A. 2C:3-1 et seq.
Defendant also asserts that he was entitled to a charge on manslaughter, based on passion and provocation. N.J.S.A. 2C:11-4(b)(2). Again we agree. The evidence that defendant was "out of control," coupled with evidence that his nephew was being victimized in the fight lends support to such a premise. 2 Wharton's Criminal Law, § 161, pages 255-256 (14th Ed. 1987); Commonwealth v. Berry, 461 Pa. 233, 336 A.2d 262 (Pa. 1975). While defendant elected not to testify there was conflicting evidence about whether his nephew was losing the fight and what may have prompted defendant's involvement.
In conclusion, we hold that the jury was improperly instructed only on the murder charge. As discussed, the evidence presented here did meet the rational basis test and the trial judge should have instructed the jury regarding the other possible verdicts of manslaughter for which there was proof. Cf. State v. Artis, 57 N.J. 24, 30 (1970).
*606 In light of our determination on the first issue we do not find it necessary to address the other points raised by the defendant except to note that, under the circumstances, we perceive no harmful error to have occurred in the admission of the photographs. R. 2:11-3(e)(2).
Thus, we reverse and remand for a new trial and further proceedings consistent with this opinion and the evidence produced at any retrial.
NOTES
[1] We note that this matter was tried before the Crisantos decision was rendered.