247 N.J. Super. 382 (1991)
589 A.2d 625
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM BISHOP, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 11, 1991.
Decided April 5, 1991.
*383 Before Judges J.H. COLEMAN and ASHBEY.
Al Glimis, Assistant Deputy Public Defender, argued the cause for appellant (Wilfredo Caraballo, Public Defender, attorney; Al Glimis on the brief).
Sandra DeLuca, Assistant Prosecutor, argued the cause for respondent (Paul T. Koenig, Jr., Prosecutor of Mercer County, attorney; Sandra DeLuca of counsel and on the brief).
The opinion of the court was delivered by J.H. COLEMAN, P.J.A.D.
The focus of this appeal is upon the positioning of a passion/provocation manslaughter jury charge in a murder trial. Because the initial jury instructions on murder did not define the elements to require the State to prove beyond a reasonable doubt the absence of passion/provocation, the murder conviction must be reversed.
This appeal follows a retrial in which defendant was again convicted of purposeful or knowing murder, contrary to N.J.S.A. 2C:11-3a(1), (Count One); and possession of a knife for an unlawful purpose, contrary to N.J.S.A. 2C:39-4d, (Count Two). After merging the possession charge with the murder, defendant was sentenced to a custodial term of life with 30 years of parole ineligibility. Defendant was previously convicted of the same offenses in 1985 but in a decision reported at 225 N.J. Super. 596, 543 A.2d 105 (App.Div. 1988), we vacated the conviction because the trial judge failed to instruct "the jury regarding the other possible verdicts of manslaughter for which there was proof." Id. at 605, 543 A.2d 105.
On this appeal, the brief filed by counsel on behalf of defendant raises the following points:

*384 I THE TRIAL JUDGE ERRED BY REPEATEDLY INSTRUCTING THE JURY THAT THEY COULD ONLY CONSIDER A PASSION/PROVOCATION MANSLAUGHTER VERDICT IF THEY ACQUITTED DEFENDANT OF MURDER.
II THE TRIAL COURT ADMITTED THE OUT-OF-COURT AND IN-COURT IDENTIFICATIONS OF THE DEFENDANT IN VIOLATION OF HIS RIGHT TO DUE PROCESS OF LAW SINCE THEY WERE THE PRODUCT OF SUGGESTIVE PROCEEDINGS AND WERE INHERENTLY UNRELIABLE (U.S. CONST. AMEND. XIV; N.J. CONST. (1947), ART. I, § 1, PAR. 1).
III DEFENDANT'S SENTENCE IS MANIFESTLY EXCESSIVE AND UNDULY PUNITIVE.
In a pro se supplemental brief, defendant raises the following contentions:
I THE WRITTEN VERDICT SHEET HERE COUPLED WITH THE INSTRUCTIONS FOR ITS USE, PRECLUDED THE JURY FROM CONSIDERING DEFENDANT'S PASSION/PROVOCATION DEFENSE IN MITIGATION OF HIS GUILT FROM MURDER TO MANSLAUGHTER.
II DISQUALIFICATION OF JUDGE FOR PERSONAL REASONS OF BIAS AND PREJUDICIAL CONCERN FOR PARTY, AND PERSONAL KNOWLEDGE OF DISPUTED EVIDENTIARY FACTS CONCERNING THE PROCEEDING.
III PRETRIAL PUBLICITY OF THE TRIAL IN THE NEWS MEDIA, WHICH WAS PREJUDICIAL, SUBLIMINALLY SUGGESTED OF GUILT, PLUS A VIOLATION OF DEFENDANT'S CONSTITUTIONAL RIGHTS.
IV THE DENIAL OF SEQUESTION OF JURY FOR THE COMPLETION OF TRIAL, AND ALLOWING JURY TO BE SEPARATED DURING THE MIDDLE OF DELIBERATION, AND JURY'S LACK OF MEMORY IN TESTIMONY.
V FALSE TESTIMONY OF EXPERT MEDICAL WITNESS, AND INCONSISTENT TESTIMONY OF AUTOPSY FINDINGS, NEWLY DISCOVERED EVIDENCE, IF AVAILABLE AT TRIAL PROBABLY WOULD HAVE CHANGED THE JURY'S VERDICT, WARRANTING AN ORDER FOR A NEW TRIAL.
VI INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN CONDUCTING PRETRIAL INVESTIGATION, AND PERFORMANCE DURING THE TRIAL PROCEDURES.
We have considered the contentions raised in light of the record. We conclude that all issues raised in both briefs are clearly without merit, except for Point I in both briefs, R. 2:11-3(e)(2).
*385 Under Point I of both briefs filed on behalf of defendant, it is contended that the jury charge respecting murder had the effect of foreclosing the jury's consideration of whether passion/provocation could reduce an otherwise purposeful murder to manslaughter. Defendant relies upon State v. Coyle, 119 N.J. 194, 574 A.2d 951 (1990), in seeking another reversal. The evidence which necessitated a passion/provocation manslaughter charge has already been outlined in our published opinion and the same evidence was presented during the retrial. Therefore, we will focus only on the jury charge and the controlling legal principles.
During a pre-charge conference, defense counsel objected to the verdict sheet which listed the possible verdicts under Count One as murder, aggravated manslaughter and manslaughter. He called this "sequential deliberation by the jury." The attorney argued that under the anticipated jury instructions, the jury would be told that if there was a purposeful or knowing homicide, the jury could return a verdict of murder before the jury considered whether there was passion/provocation which could reduce the purposeful or knowing killing to manslaughter. The attorney concluded his objection by saying "so I think the jury is precluded from going any further after they find a murder, will never consider the affirmative defense and may return a verdict here that disregards the instructions given as to passion/provocation and really forecloses the opportunity that this defendant has to have the jury consider guilt on that lesser included offense."
The trial judge acknowledged the importance of the objection and concluded that State v. Zola, 112 N.J. 384, 405-406, 548 A.2d 1022 (1988), permits sequential resolution of available verdicts.
Consistent with defense counsel's objection to permitting the jury to engage in sequential deliberations, he urged the jury in his summation to consider aggravated manslaughter and manslaughter simultaneously with its consideration of murder. He *386 argued that when the jury was considering whether the killing was purposeful or knowing, which focused on defendant's state of mind, it should consider whether passion/provocation played a role. He argued that the killing was not purposeful or knowing, but that defendant may have swung a knife recklessly and if he swung the knife at all, it was during the heat of passion which provoked him to swing the knife. He told the jury that if it found that is the way it happened, defendant would be guilty of only manslaughter, if anything.
While presenting the foregoing argument to the jury, defense counsel stated:
Now, there's another element involved here, too, and you'll receive a charge on the elements of the offense of manslaughter. You will receive a charge on what they call passion provocation. And what I anticipate the judge will tell you is that if you find that William Bishop received a reasonable provocation for his conduct, which generated a passion in him that really overrode his normal inhibiting the defense mechanisms controls; if there was that passion and that provocation under these circumstances, even though the mental element was purposely and knowingly; even though you find, yes, he had the purpose and he knew exactly what he was doing and did what he set out to accomplish when he did this stabbing; if you find that there was this passion existing because of this provocation, there's a mitigating effect under our law. It is not defined as a murder under those circumstances. It is defined under the sense of manslaughter.
* * * * * * * *
And if there was that passion, if there was that provocation, provocation inherent in the fact that there were relatives involved, that he had been hit, then I suggest to you, your verdict, even if it's purposeful and knowing, even if that's the mental element, it would have to be that, an offense of manslaughter
* * * * * * * *
If you agree and find there is evidence that the killing was at the hand of William Bishop, then I suggest to you that the evidence does not support a conviction for murder. We're talking about a lesser offense than that. We're talking about another mental element. We're talking about a passion/provocation or a recklessness that mitigates it to a manslaughter type offense.
The prosecutor, on the other hand, was not as informative respecting the law in his summation. He argued only that the killing was purposeful or knowing. He stated:
If he did either of those, it's murder. Clear and simple. It doesn't matter if he took two seconds to form that purpose or two minutes or two hours or two *387 months. If that was his purpose, and he formed it, and then carried out that purpose in stabbing Frank Randolph, that's murder, ladies and gentlemen. Forget premeditation, forget that malice aforethought business. Those words don't exist.
A purpose to do an act is just that, it's a purpose to do an act. You are achieving a certain result which you intend. When you act knowing, you do an act knowing that it's practically certain that a certain result is going to happen. When you plunge a knife into the chest of a living human being, at his heart, deep enough to penetrate that organ, at the very least you are practically certain that you are going to cause serious bodily injury that is going to lead to the death of that human being.
The prosecutor never informed the jury one way or the other as to whether a purposeful or knowing murder may be mitigated to manslaughter if the jury found passion/provocation existed.
The trial judge then instructed the jury concerning the elements of the murder charge. While defining the elements, the jury was told:
The essential determination for you to make in regard to the charge of murder in this case is whether the defendant committed the killing purposely or knowingly as I have defined these terms for you.
In order for you to find the defendant guilty of murder, the state must first establish beyond a reasonable doubt that the killing of the decedent was committed by the defendant, and that it was done purposely or knowingly as I have defined these terms for you.
* * * * * * * *
If after a consideration of all of the evidence, you are convinced beyond a reasonable doubt that the defendant either purposely or knowingly caused the death of the victim, then your verdict should be guilty.
If, however, after a consideration of all of the evidence, you find that the state has failed to prove each and every element of the offense, your verdict should be not guilty.
Now, if you find the defendant guilty of murder, go no further as far as Count 1 is concerned. However, if you find the defendant not guilty of murder, you must consider the lesser included offense of aggravated manslaughter.
At no time during the initial charge on murder was the jury told to consider passion/provocation which could reduce the murder to manslaughter unless the State proved beyond a reasonable doubt that defendant did not kill in the heat of passion.
Thereafter, the court instructed the jury respecting aggravated manslaughter which did not involve any discussion of passion/provocation. *388 The court concluded the aggravated manslaughter charge by telling the jury if it found defendant guilty of aggravated manslaughter, "go no further as far as Count One is concerned."
Next, the court instructed the jury on manslaughter. After defining the elements of manslaughter, the jury was instructed for the first time that murder may be reduced to manslaughter "when the killing is committed in the heat of passion resulting from a reasonable provocation." The court then defined the meaning of provocation "which would permit the jurors, you jurors, to find that the offense is manslaughter rather than murder."
The only other reference in the charge concerning how the jury could reduce murder to passion/provocation manslaughter came at the end of the charge on Count One, meaning after the charge on murder, aggravated manslaughter and manslaughter had been given. At that point, the jury was instructed that:
If you are satisfied beyond a reasonable doubt that the elements of murder have been proved, but you have a reasonable doubt as to whether the state has proven that the defendant did not act under the stress of reasonable provocation, you must find the defendant not guilty of murder and find him guilty of provocation, passion manslaughter.
If you are convinced beyond a reasonable doubt that the state proved that the defendant knowingly or purposely caused death or serious bodily injury resulting in death without acting in the heat of passion upon reasonable provocation, then you must find the defendant guilty of murder.
At the conclusion of the entire charge, defense counsel repeated his original objection to the "sequential pattern of deliberation" in the charge and in the verdict sheet.
The present case was tried after the decision in State v. Zola, supra, had been rendered. Zola approved of sequential deliberation or resolution by a jury because juries "should not be permitted to consider lesser included offenses until they have unanimously found defendant not guilty on the greater crime." 112 N.J. at 405, 548 A.2d 1022. But Zola was not a passion/provocation case and the Court warned that "care must be taken to avoid the stratification of thought that would deter a *389 jury from returning the proper available verdict." Id. at 406, 548 A.2d 1022.
The problem of sequential jury deliberations was revisited in State v. Coyle, supra, decided after the trial in the present case. There, the Court pointed to its decision in State v. Zola, supra, and observed that there "is nothing inherently wrong with a sequential charge" but reserved for another day the question of whether the model jury charge is adequate and whether the sequential charges should be given in all cases. Id. at 223, 574 A.2d 951. The Court recognized, however, that in a case where there is no evidence of passion/provocation, "sequential charges usually provide a framework for orderly deliberations." Ibid. But in murder cases where there is evidence of passion/provocation, "a court must take additional care in issuing clear instructions." Id. at 223-224, 574 A.2d 951. Where passion/provocation is implicated, the trial judge must instruct the jury that "to find murder it must be convinced beyond a reasonable doubt that the accused did not kill in the heat of passion...." State v. Grunow, 102 N.J. 133, 145, 506 A.2d 708 (1986); State v. Coyle, supra, 119 N.J. at 222-223, 574 A.2d 951. In other words, the absence of passion/provocation is an additional element of the murder charge which the State must prove beyond a reasonable doubt. It is a negative element which the State must prove in much the same way as in a charge for possession of a handgun without a permit under N.J.S.A. 2C:39-5b. See State v. Ingram, 98 N.J. 489, 500, 488 A.2d 545 (1985).
The charge, when considered as a whole and read in conjunction with the verdict sheet, informed the jury that only one of three possible verdicts could be returned on Count One: murder, aggravated manslaughter or manslaughter. Contrary to defense counsel's request, the jury was directed to deliberate beginning with the most serious and to consider the two lesser included manslaughter offenses only if defendant was acquitted of murder. But the real problem in the case boils down to the *390 positioning of the passion/provocation manslaughter charge. See State v. Zola, supra, 112 N.J. at 406, 548 A.2d 1022.
The answer to the positioning question was given in State v. Coyle, 119 N.J. at 224, 574 A.2d 951. There, it was held that the initial charge of murder, where passion/provocation is involved, must define the elements of murder to include "the effect of passion/provocation on an otherwise intentional killing." Ibid. The reason for including the passion/provocation instruction within the initial charge on murder is because the absence of passion/provocation is an element of the murder charge which the State must prove beyond a reasonable doubt. When the jury is not informed of such during the instructions on the purposeful or knowing murder, the sequential instructions permit the jury to convict a defendant of murder without any consideration of passion/provocation. The prejudicial impact was enhanced when the jury was instructed that if it found the killing was purposeful or knowing, "go no further as far as Count 1 is concerned." Considering the instructions as a whole, we perceive a substantial likelihood that the jury reached a decision that defendant was guilty of murder without consideration of the State's burden to prove the absence of passion/provocation.
The instructions given in the present case are virtually identical to those condemned in State v. Coyle, supra. We conclude, as did the Supreme Court in Coyle, that considering the summations and the instructions as a whole, the jury charge had the clear "potential to foreclose jury consideration of whether passion/provocation should reduce an otherwise purposeful killing from murder to manslaughter. Thus, despite the evidence of passion/provocation in the record, the jury may have convicted defendant of murder simply by finding that `it [was] his conscious object to cause death or serious bodily injury,' without having considered the possibility of a manslaughter verdict." State v. Coyle, supra, 119 N.J. at 222-223, 574 A.2d 951.
*391 We recognize that the excellent arguments from defense counsel informed the jury that passion/provocation could reduce an otherwise purposeful or knowing killing to manslaughter. But defense counsel's arguments "can by no means serve as a substitute for [proper] instructions by the court." State v. Marshall, 123 N.J. 1, 145, 586 A.2d 85 (1991). See also Kentucky v. Whorton, 441 U.S. 786, 789, 99 S.Ct. 2088, 2089, 60 L.Ed.2d 640, 643 (1979); Taylor v. Kentucky, 436 U.S. 478, 488-489, 98 S.Ct. 1930, 1936, 56 L.Ed.2d 468, 477 (1978). Moreover, the jury was instructed on several occasions that it should follow the law as stated by the court and not as stated by the attorneys. Because defense counsel's summation did not follow the court's instructions to the jury, the jury was required by the court's instructions to disregard it to that extent. We hold that the prejudicial impact of the failure of the court to instruct the jury properly during the initial murder charge was not eradicated by the argument of defense counsel in all reasonable likelihood.
Finally, we do not consider the erroneous jury instructions to be amenable to the harmless error rule. Erroneous jury instructions "are almost invariably regarded as prejudicial" and are "poor candidates for rehabilitation under the harmless philosophy." State v. Vick, 117 N.J. 288, 289, 566 A.2d 531 (1989) (quoting State v. Crisantos (Arriagas), 102 N.J. 265, 273, 508 A.2d 167 (1986)). Such instructions "are presumed to be reversible error." State v. Grunow, supra, 102 N.J. at 148, 506 A.2d 708.
The judgment of conviction is reversed. The matter is remanded to the Law Division for a new trial.[1]
NOTES
[1] Two unpublished opinions of this court have come to our attention which have also reversed murder convictions based on State v. Coyle, supra. See State v. Lundberg, A-4922-87T4, decided March 18, 1991, and State v. Smith, A-1945-88T4, decided November 29, 1990. Despite the Court's refusal in Coyle, 119 N.J. at 223, 574 A.2d 951, to rule on the adequacy of the model jury charge used in both Coyle and the present case, we think it is time for the Criminal Charge Committee to revise the model jury charge to bring it into compliance with Coyle.