629 A.2d 103

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
ALPHONSO ROBINSON, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 16, 1993—Decided May 10, 1993.

Motion 'for Reconsideration Granted June 3, 1993—Decided June 8, 1993.

Before Judges ANTELL, SKILLMAN and VILLANUEVA.

*Stephen W. Kirsch* argued the cause for appellant (*Zulima V. Farber,* Public Defender, attorney; *Mr. Kirsch,* Assistant Deputy Public Defender, of counsel and on the brief).

*Deborah Bartolomey,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney; *Ms. Bartolomey,* of counsel and on the letter brief).

The opinion of the court was delivered by

VILLANUEVA, J.S.C. (temporarily assigned).

Defendant appeals from his convictions of attempted murder, *N.J.S.A.* 2C:11–3 and *N.J.S.A.* 2C:5–1; second degree aggravated assault, *N.J.S.A.* 2C:12–1b(1); third degree unlawful possession of a weapon, *N.J.S.A.* 2C:39–5b; and second degree possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:39–4a. Defendant seeks to have this court articulate that there is a crime of attempted passion/provocation manslaughter as a lesser-included offense of attempted murder. We so hold, but nonetheless affirm

the conviction for attempted murder as well as the other convictions.

On May 11, 1988, William Robinson encountered his nephew, defendant Alphonso Robinson, who owed him a substantial sum of money. William testified that he told defendant, "that I wanted my money and if he don't give me my money then I'm going to hurt him." William confronted defendant again a short time later and repeated his demand to be paid. Defendant paid him back some of the money, but could not repay the entire amount, so William, a boxer, punched defendant once extremely hard "on the nose and bridge of the mouth." Defendant "buckled" and "staggered back," according to William, who was preparing to hit him again but did not because he decided that if he hit defendant again as hard as the first time, defendant would "drop [ ] to the concrete" and possibly die. William then told defendant that he had better be repaid soon or else he would have to "really" hurt defendant. William turned and walked away.

As William got only a few steps away from defendant, he heard a gunshot and felt a bullet graze his leg and go through one of his fingers. He began to run in a "zigzag" fashion, but was struck by three more bullets in the arm, hip, and back, causing life-threatening injuries. One bullet missed him.

Defendant was indicted for first degree attempted murder, *N.J.S.A.* 2C:5–1 and *N.J.S.A.* 2C:11–3 (count one); second degree aggravated assault, *N.J.S.A.* 2C:12–1b(1) (count two); third degree unlawful possession of a firearm, *N.J.S.A.* 2C:39–5b (count three); and second degree possession of a handgun for an unlawful purpose, *N.J.S.A.* 2C:39–4a (count four). William testified before the grand jury.

A few months later, after William engaged in a conversation with his sister, he returned to the Essex County Prosecutor's Office "to tell them to drop [the] charges because of a mistake [he] made...." William had to be subpoenaed in order to force him to appear as a witness for the State. At trial, William testified in contradiction to his prior statement and to his grand jury testimo-

ny. William testified at trial that he had never seen the defendant shoot him. The jury convicted defendant of all the charges.

The judge sentenced defendant to a term of fifteen years imprisonment on count one with a five-year parole disqualifier, and a concurrent term of seven years with a three-year parole disqualifier on count two. Counts three [1] and four were merged into counts one and two. The judge also imposed aggregated VCCB penalties of sixty dollars.

Defendant makes the following arguments on appeal:

POINT I DEFENDANT WAS ENTITLED TO A JURY INSTRUCTION ON ATTEMPTED PASSION/PROVOCATION MANSLAUGHTER AS A LESSER–INCLUDED OFFENSE OF ATTEMPTED MURDER. (Not Raised Below).

POINT II THE STATE'S SUMMATION TO THE JURY DENIED DEFENDANT DUE PROCESS AND A FAIR TRIAL WHEN THE PROSECUTOR REPEATEDLY ARGUED WITH NO EVIDENTIARY BASIS THAT DEFENDANT'S FAMILY HAD PRESSURED THE VICTIM INTO CHANGING HIS STORY. (Not Raised Below).

POINT III DEFENDANT'S CONVICTION FOR AGGRAVATED ASSAULT MUST MERGE INTO HIS CONVICTION FOR ATTEMPTED MURDER. (Not Raised Below).

POINT IV THE SENTENCE ON COUNT ONE IS MANIFESTLY EXCESSIVE.

## I.

Defendant raises for the first time on appeal that he was entitled to a jury instruction on attempted passion/provocation manslaughter as a lesser-included offense of attempted murder.

The reason that the passion/provocation doctrine was limited to murder is historical. The doctrine was developed as "a concession to the frailty of man, a recognition that the average person can understandably react violently to a sufficient wrong and hence some lesser punishment is appropriate." (citations omitted). *State v. Mauricio*, 117 *N.J.* 402, 410, 568 *A.2d* 879 (1990). A

---

[1] Count three should not have been merged, *State v. Cooper*, 211 *N.J.Super.* 1, 22–23, 510 *A.2d* 681 (App.Div.1986), but the State did not cross-appeal.

concession to these extenuating circumstances was needed in murder cases, because, historically, the penalty in all cases of murder was fixed at death. 2 W. LaFave & A. Scott, *Substantive Criminal Law* § 7.10(h), at 270 (1986). The passion/provocation rule was an attempt to reconcile the preservation of the fixed death penalty for murder with a limited concession to human weakness. *Ibid.*

There is, of course, no longer a fixed penalty of death for the crime of murder, and therefore the rationale for the passion/provocation doctrine may not fully explain the doctrine's continued viability. *LaFave & Scott, supra,* quoting *Dressler, Rethinking Heat of Passion: A Defense in Search of a Rationale,* 73 J.Crim.L. & C. 421, 423 (1982). There may, however, be justification for the retention of the heat-of-passion doctrine because of the wide range of punishment for a homicide (from death, *N.J.S.A.* 2C:11–3c, to as little as five years for manslaughter, *N.J.S.A.* 2C:11–4c). Thus there may still be justification for "a concession to the frailty of man," *State v. Mauricio, supra,* 117 *N.J.* at 410, 568 *A.*2d 879, given that for a murder conviction the defendant must always serve at least a 30–year sentence. *N.J.S.A.* 2C:11–3b.

Defendant argues that, despite evidence that his actions may have been provoked, the judge did not instruct the jury *sua sponte* on attempted passion/provocation manslaughter as a lesser-included offense of attempted murder. Consequently, defendant argues that his Fourteenth Amendment due process rights and his state constitutional right to a fair trial were violated. The State urges that "attempted passion/provocation manslaughter" is not, and should not be, a cognizable crime in New Jersey because it was not intended to be linked to the crime of "attempt" to form an offense called "attempted passion/provocation manslaughter."

*N.J.S.A.* 2C:11–4b(2) codifies the common law definition of passion/provocation manslaughter. *State v. Mauricio, supra,* 117 *N.J.* at 411, 568 *A.*2d 879. Under that statute criminal homicide constitutes manslaughter when:

[a] homicide which would otherwise be murder ... is committed in the heat of passion resulting from a reasonable provocation ...

*[Ibid.]*

*N.J.S.A.* 2C:11–4b(2) does not define the elements of the offense of passion/provocation manslaughter. Instead, the statute refers to "a homicide which would otherwise be murder." While the statute exists to mitigate the crime of murder when the act is committed in the heat of passion, likewise for an attempt to commit manslaughter the same element of mitigation should apply.

 Under the Code there are ordinarily three possible lesser-included offenses of murder: aggravated manslaughter, *N.J.S.A.* 2C:11–4a; reckless manslaughter, *N.J.S.A.* 2C:11–4b(1); and passion/provocation manslaughter, *N.J.S.A.* 2C:11–4b(2). However, there is a marked difference between passion/provocation manslaughter and the other two manslaughter offenses. While both aggravated and reckless manslaughter involve varying degrees of recklessness[2], passion/provocation manslaughter involves the same purposeful or knowing conduct that is ordinarily murder under *N.J.S.A.* 2C:11–3a(1) or (2) except that in order to constitute passion/provocation manslaughter instead of murder, the purposeful or knowing homicide must be "committed in the heat of passion resulting from a reasonable provocation." *N.J.S.A.* 2C:11–4b(2). The burden of proving beyond a reasonable doubt a lack of passion/provocation rests on the State. *State v. Grunow*, 102 *N.J.* 133, 145, 506 *A.*2d 708 (1986); *State v. Bishop*, 247 *N.J.Super.* 382, 389, 589 *A.*2d 625 (App.Div.1991).

 The range of lesser-included offenses changes somewhat when the greater offense is attempted murder. Because nothing

---

[2] Aggravated manslaughter requires that the defendant kill recklessly under circumstances manifesting extreme indifference to human life, while reckless manslaughter requires only that the defendant kill recklessly. *N.J.S.A.* 2C:11–4a and 2C:11–4b(1). *See State v. Pridgen*, 245 *N.J.Super.* 239, 246, 584 *A.*2d 869 (App.Div.1991).

short of a purposeful state of mind will suffice for a criminal attempt, *State v. Rhett*, 127 *N.J.* 3, 7, 601 *A.*2d 689 (1992), *State v. McAllister*, 211 *N.J.Super.* 355, 362, 511 *A.*2d 1216 (App.Div.1986), the concepts of attempted felony murder, attempted reckless manslaughter or attempted aggravated manslaughter are self-contradictory, for one cannot attempt (*i.e.*, intend) to cause an unintended result. *State v. Darby*, 200 *N.J.Super.* 327, 331–32, 491 *A.*2d 733 (App.Div.1984), *certif. denied*, 101 *N.J.* 226, 501 *A.*2d 905 (1985). But the same is not true of the concept of attempted passion/provocation manslaughter since passion/provocation manslaughter requires the same state of mind as murder. The incongruity decried in *Darby* does not arise when one who is provoked into purposely trying to kill someone, but fails to do so because he is a bad shot or is otherwise unsuccessful in his attempt (and is thus charged with attempted murder), is given the same consideration of his provocation as the provoked person who successfully carries out his intent to kill. The same purposeful state of mind satisfies either attempted murder or attempted passion/provocation manslaughter.

Incongruity would arise if attempted passion/provocation manslaughter were not recognized as a lesser-included offense of attempted murder. In 1986, the Legislature raised attempted murder from a second to a first-degree crime. *N.J.S.A.* 2C:5–4. From then on, if attempted passion/provocation manslaughter is not charged as a lesser-included offense of attempted murder and the jury would not be able to consider passion/provocation, the person who kills someone while provoked and acting under the heat of passion is better off than if he or she merely attempts to do so and fails. This is so because passion/provocation manslaughter is a second-degree offense, while attempted murder is a first-degree offense. The Legislature could not have intended such a result. However, there would be no incongruity if the jury judging the provoked person who tries to kill and fails is permitted to consider the lesser-included offense of attempted passion/provocation manslaughter, since if convicted of the lesser offense that person would then be guilty of only a second degree

crime. *N.J.S.A.* 2C:5–4a. Except for an attempt to commit a crime of the first degree other than murder, the Legislature has indicated that those who attempt to commit crimes are to be punished the same as those who succeed. *See N.J.S.A.* 2C:5–4a; *State v. Sanders,* 230 *N.J.Super.* 233, 237, 553 *A.*2d 354 (App.Div. 1989).

However, the Legislature has never intended to punish the failed criminal more seriously than the successful one. In the absence of a clear legislative statement supporting such an inconsistent result, we recognize the crime of attempted passion/provocation manslaughter. There are both strong logical and legal reasons for doing so. The two crimes bear the same relationship to each other as do the completed crimes of murder and passion/provocation manslaughter, and require the same culpability for their commission. Moreover, the inconsistency of punishing a person who successfully commits passion/provocation manslaughter less severely than one who purposely tries, but fails, to kill under the same circumstances is eliminated by requiring this charge to be presented to the jury where appropriate in attempted murder cases.

## II.

That brings us to whether it was reversible error for the judge not to charge *sua sponte* attempted passion/provocation manslaughter as a lesser-included offense of attempted murder. If the appropriateness of submitting the lesser-included offense to the jury is "clearly indicate[d]" by the evidence, then it must be charged, *State v. Choice,* 98 *N.J.* 295, 299, 486 *A.*2d 833 (1985), even when it is not requested. *State v. Powell,* 84 *N.J.* 305, 318–19, 419 *A.*2d 406 (1980).

However, the Supreme Court in *State v. Choice, supra,* stated that in *Powell* the dictum "was limited to a statement of the trial court's duty. The limitation was explicit: 'We express no opinion here as to the effect, on appeal, of a failure so to charge where no request has been made. Rather we shall state the *duty* of the

trial court when similar circumstances present themselves.' " *Id.*
98 *N.J.* at 299, 486 *A.*2d 833. *See also State v. Grunow, supra,*
102 *N.J.* at 148, 506 *A.*2d 708.

The State contends that because the offense of passion/provoca-
tion manslaughter is unknown to the New Jersey courts, it would
be beyond reason to expect a trial judge's duty to encompass
granting an unmade request to charge an unknown offense and
furthermore had the judge, without a request, actually charged
attempted passion/provocation manslaughter, defendant would
now be arguing that the judge had committed plain error requir-
ing reversal.

The question of whether evidence is sufficient to raise an
issue of passion/provocation is governed by the four-pronged test
set forth in *Mauricio, supra,* 117 *N.J.* at 412–13, 568 *A.*2d 879.
The evidence must suggest that: (1) the provocation must be
adequate; (2) there must not have been a reasonable time to "cool
off" between the provocation and the retaliation by defendant; (3)
the provocation must have actually impassioned the defendant;
and (4) the defendant must not have actually cooled off before the
[attempted] slaying. *Id.* at 411, 568 *A.*2d 879. The first two
prongs are objective, while the second two prongs are subjective.
*Id.* 117 *N.J.* at 413, 568 *A.*2d 879.

Here, the first prong, whether the defendant's punch con-
stituted an adequate provocation, was satisfied. The *Mauricio*
Court made clear that "battery, except for a light blow, has
traditionally been considered, almost as a matter of law, to be
sufficiently provocative." *Id.* at 414, 568 *A.*2d 879, *citing* 2 W.
LaFave and A. Scott, *Substantive Criminal Law,* § 7.10, at 256
(1986). "[I]t would clearly be a jury question whether a blow in
the face, either by the fist or the open hand, would not be
sufficient to exclude malice." *State v. Herrmann,* 77 *N.J.L.* 534,
535, 76 *A.* 1086 (E. & A. 1909); *see also State v. Bowens,* 108 *N.J.*
622, 633, 532 *A.*2d 215 (1987) (where self-defense is normally
appropriate because of unjustified attack, but defendant's re-
sponse is disproportionate to original attack, passion/provocation

manslaughter would be an appropriate verdict).[3] The initial ag-
gressor was William, a boxer, who punched defendant so hard in
the face that defendant "buckled" and "staggered" as a result of
the punch. Had William punched the defendant again, he felt that
the defendant would have "dropped to the concrete" and possibly
could have died. This attack was not the "light blow" that the
*Mauricio* Court exempted from the general rule that battery is
"almost as a matter of law" sufficient provocation to warrant a
jury charge on the subject. *State v. Mauricio, supra,* 117 *N.J.* at
414, 568 *A.*2d 879. In fact, the judge himself noted at sentencing
the presence of provocation as a mitigating factor.

The second prong of the test apparently was satisfied because,
objectively, there may not have been reasonable time to "cool off"
between the provocation and the purported retaliation by the
defendant.

However, it is not clearly indicated that the last two prongs of
the test were satisfied.

█ When a defendant requests a charge on passion/provoca-
tion manslaughter as a lesser-included offense of murder, the trial
court generally should instruct the jury on that form of man-
slaughter if an examination of the record discloses that the
evidence satisfied the rational-basis standard to have the jury
decide whether the defendant had committed the lesser-included
offense. *Id.* at 417–18, 568 *A.*2d 879. But, a different approach is
appropriate if defendant has failed to request a passion/provoca-
tion manslaughter instruction. The defense at trial was solely
that there was insufficient proof that the defendant was the
shooter. There was an absence of specific evidence that the now-
claimed provocation impassioned the defendant or that the defen-
dant failed to cool off. He never offered evidence or argument on
these two issues.

---

[3] It was the Attorney General who suggested this very example of what might
constitute adequate provocation to the *Bowens* Court. *See State v. Bowens,
supra,* 108 *N.J.* at 633, 532 *A.*2d 215.

Absence of argument, as in this case, by the defendant's attorney who would be in the best position to know if the defendant acted under the stress of passion/provocation, is a factor tending to show that a jury charge on passion/provocation manslaughter was not required. *State v. Perry*, 124 *N.J.* 128, 160, 590 *A*.2d 624 (1991). A trial court is not obliged "on its own [to] meticulously to sift through the entire record in every murder trial to see if some combination of facts and inferences might rationally sustain a manslaughter charge." *State v. Choice, supra*, 98 *N.J.* at 299, 486 *A*.2d 833. Unless requested by the defendant, the trial judge has no duty to give a passion/provocation manslaughter instruction absent clear facts in evidence indicating the appropriateness of such an instruction. Those facts must "clearly indicate the possibility that the crime was manslaughter based upon ... provocation/passion ..." *Ibid.* Therefore, attempted passion/provocation manslaughter was not clearly indicated by the evidence.

## III.

Defendant belatedly contends that prosecutorial misconduct deprived him of a fair trial because the prosecutor's summation referred to family pressure put upon the victim to change his story. Although defendant did not object to the allegedly unfair summation when it occurred, defendant asserts that there was no evidentiary support for these references in the record. This is not true.

Defendant did not object to any part of the prosecutor's summation at trial. "Ordinarily a defendant will not be heard to claim prejudice if defense counsel does not make a timely objection to improper remarks." *State v. Farrell*, 61 *N.J.* 99, 106, 293 *A*.2d 176 (1972). In such cases, the conviction will stand unless the summation contained "error possessing a clear capacity to bring about an unjust result and which substantially prejudiced the defendant's fundamental right to have the jury fairly evaluate the merits of his defense." *State v. Irving*, 114 *N.J.* 427, 444, 555

A.2d 575 (1989), *quoting State v. Thornton,* 38 *N.J.* 380, 396, 185 A.2d 9 (1962), *cert. denied,* 374 *U.S.* 816, 83 *S.Ct.* 1710, 10 *L.Ed.*2d 1039 (1963). We may infer from defendant's failure to object to any of these comments at the time they were made that the remarks were not considered "in the atmosphere of the trial, out of bounds". *State v. Hipplewith,* 33 *N.J.* 300, 314, 164 *A.*2d 481 (1960). Had defendant objected, any prejudice inherent in these remarks could have been readily corrected. *Ibid.*

 Despite William's recantation and his denial that his family had caused it, there was ample evidence in the record to support a rational inference that William's change of heart was caused by family pressure. The prosecutor's summation was legitimate comment on the rational inferences arising from the State's evidence.

## IV.

 The State agrees with defendant's contention that his convictions for attempted murder and aggravated assault should merge because aggravated assault is a lesser-included offense of attempted murder. *N.J.S.A.* 2C:1–8a(1) and *N.J.S.A.* 2C:1–8d. There must be a merger of the two offenses.

## V.

 Defendant contends that his presumptive sentence with a *Graves* Act parole disqualifier on count one is excessive because, although defendant shot his uncle at least four times, his uncle punched him.

Defendant was sentenced to the presumptive term of 15 years upon his conviction for first degree attempted murder with a five-year parole bar, the minimum required in this case by the *Graves Act, N.J.S.A.* 2C:43–6c. The judge found aggravating factor *N.J.S.A.* 2C:44–1a(2), the severity of the victim's injuries, because the victim was struck in the back, arm, leg, and finger by gunshot. The judge also found a need to deter the defendant and others,

*N.J.S.A.* 2C:44–1a(9). As mitigation, the court found some provocation, *N.J.S.A.* 2C:44–1b(3), and the defendant's youth and the fact that it was defendant's first conviction. *N.J.S.A.* 2C:44–1b(7).

Because the trial judge found the aggravating and mitigating factors to be in equipoise, he imposed the presumptive term. Imposition of the presumptive term with a minimum *Graves Act* bar for attempting to murder the victim by shooting at him five times is not an abuse of discretion. *State v. Kruse*, 105 *N.J.* 354, 358, 521 *A.*2d 836 (1987).

It is directed that the conviction under count two be merged with the conviction under count one of the indictment. The judgment of conviction under count one is affirmed.