**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5810-12T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DAVID RICHARDSON,

    Defendant-Appellant.

_____

Argued December 6, 2016 — Decided July 12, 2017

Before Judges Fisher, Ostrer and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 10-10-0860.

Al Glimis, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Mr. Glimis, of counsel and on the brief).

Joseph H. Enos, Jr., Senior Assistant Prosecutor, argued the cause for respondent (Sean F. Dalton, Gloucester County Prosecutor, attorney; Mr. Enos, on the brief).

PER CURIAM

Defendant David Richardson appeals his convictions and aggregate thirty-one-and-a-half year sentence on various charges

including burglary, sexual assault, criminal restraint, theft and possession of a weapon for an unlawful purpose. Based on our review of the record in light of the applicable law, we affirm defendant's convictions and remand for entry of an amended judgment of conviction and reconsideration of the penalties imposed in accordance with this opinion.

On October 13, 2010, defendant was charged in an indictment with first-degree aggravated sexual assault while armed with a weapon, N.J.S.A. 2C:14-2(a)(4) (count one); first-degree aggravated sexual assault during the commission of a crime, N.J.S.A. 2C:14-2(a)(3) (count two); second-degree sexual assault, N.J.S.A. 2C:14-2(c)(1) (count three); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count four); second-degree burglary, N.J.S.A. 2C:18-2(a)(1) (count five); third-degree criminal restraint, N.J.S.A. 2C:13-2(a) (count six); third-degree theft, N.J.S.A. 2C:20-3 (count seven); fourth-degree contempt of a judicial order, N.J.S.A. 2C:29-9(a) (count eight); third-degree possession of a knife for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count nine); and third-degree criminal mischief, N.J.S.A. 2C:17-3(a)(1) (count ten).

During the fifteen-day bifurcated jury trial,[1] defendant's former girlfriend, B.M.,[2] testified concerning a five-hour event that took place in her apartment from the late evening of June 19, 2010, until approximately 3:30 a.m. on June 20, 2010. During this time, B.M. alleged she was sexually assaulted, beaten and threatened by defendant.

B.M. testified that she dated defendant for about three years and that their relationship ended months before June 2010. Defendant never lived at B.M.'s apartment and she never gave him a key to her apartment. According to B.M., defendant did not have permission to enter her apartment. Prior to June 19, 2010, B.M. obtained a domestic violence final restraining order (FRO) barring defendant from her apartment.

B.M. testified that on June 19, 2010, she was alone in her apartment and not expecting anyone. She locked the doors and windows and went to sleep in her bedroom. She awoke to the sound of a door opening and saw defendant standing over her bed.

---

[1] The court severed count eight charging a fourth-degree violation of a court order from the trial on the remaining charges, and conducted a second trial on count eight with the same jury immediately after the jury returned its verdict in the first trial.

[2] We employ initials for the victim and her neighbor, J.W., to protect their privacy.

B.M. told defendant to leave and began screaming. Defendant and B.M. struggled over her cell phone, causing B.M. to kick a hole in the bedroom wall. Defendant took possession of B.M.'s cell phone and put his hand over B.M.'s mouth as he examined the phone's contents until he came across a photograph of a man that caused defendant to become angry. B.M. never regained possession of the cell phone during the evening.

Defendant removed B.M.'s clothes, forced her to have sexual intercourse with him, and told her to stop screaming throughout the attack. Defendant walked B.M. to the bathroom and made her take a shower. Following the shower, defendant took B.M. to the kitchen, lifted her onto the kitchen table, held her down, and forced her to have sexual intercourse with him a second time.

Defendant took B.M. from the kitchen to her bedroom, where he head-butted her and punched her in the face with a closed fist. Defendant brought B.M. from the bedroom to the living room to obtain access to her computer. Armed with a knife he had taken from the kitchen, defendant threatened to kill B.M. unless she provided her computer and Facebook passwords. B.M. complied.

Defendant became enraged upon reviewing B.M.'s emails and Facebook posts, and he cut holes in B.M.'s furniture with the knife. Defendant seized B.M.'s purse and took approximately $2000 cash from it. B.M. returned to her bedroom as defendant paced

A-5810-12T2

around her apartment. At approximately 3:30 a.m., B.M. heard her neighbor J.W. return home to the adjoining apartment. B.M. waited a few minutes, left her bedroom, and saw that defendant had just departed.

B.M. ran to J.W.'s apartment. J.W. testified she opened her door and saw B.M. visibly terrified and shaking, and not wearing pants or underwear. B.M. told J.W. "he raped me" and asked J.W. to call B.M.'s mother. After several unsuccessful attempts to contact B.M.'s mother, J.W. called the police.

When the police arrived, J.W. went into B.M.'s apartment to get B.M. clothing. J.W. observed that B.M.'s apartment was in disarray. J.W. noticed "the sheets were pulled off the bed," and there was "a huge hole in the [bedroom] wall."

Within minutes, police arrived at BM's apartment. Although nothing was found to suggest a forced entry, police observed: knife slashes in the living room furniture; blood on a pillow, doorframe, kitchen floor, and kitchen cabinet; and a hole in a bedroom wall. When arrested, defendant was in possession of his cellphone, a set of keys, and $1652 in cash. And, that evening, at a local hospital, medical personnel determined that BM's injuries included a 'reddened area on [BM's] face,' 'some swelling,' and a 'reddened area [on] her bottom lip.' Later, a

State Police forensic scientist determined that DNA taken from defendant after his arrest matched DNA from vaginal swabs of B.M.

The defense called Dr. Kathleen Brown, Ph.D., as an expert in the areas of sexual assault nurse examinations, the actions of the sexual assault response team, and the detection of injuries as a clinical nurse. Brown opined that B.M. suffered "very minimal injuries," explaining that victims who are held down with force typically have bruises from the restraint, and that B.M. did not show evidence of such bruises. Brown testified she was "not saying [B.M.] wasn't sexually assaulted," but that B.M.'s injuries were not consistent with the violence B.M. described. Brown acknowledged there does not need to be any physical injury in a sexual assault case. Brown also testified that DNA evidence is helpful in cases where the assailant is unknown, but when there is a relationship between the assailant and victim, it is "a common strategy" for the accused to allege "the sex was consensual."

The jury acquitted defendant of first-degree aggravated sexual assault as alleged in count one. Defendant was found guilty of first-degree aggravated sexual assault during the commission of a burglary (count two), second-degree sexual assault through the use of force or coercion (count three), second-degree burglary (count five), third-degree theft (count seven), third-degree possession of a weapon (count nine), and criminal mischief (count

A-5810-12T2

ten). The jury also found defendant guilty of the lesser-included offenses of simple assault (count four) and false imprisonment (count six). At the conclusion of the second phase of the bifurcated trial, defendant was convicted of fourth-degree contempt of a court order (count eight).

Defendant was sentenced to a twenty-year custodial term for first-degree aggravated sexual assault (count two) subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, a consecutive ten years for second-degree sexual assault (count three) subject to the requirements of NERA, and a consecutive eighteen months for fourth-degree contempt of a court order (count eight). The court imposed fines and penalties, including a $3000 fine for the Sex Crime Victim Treatment Fund (SCVTF) under N.J.S.A. 2C:14-10. This appeal followed.

On appeal, defendant makes the following arguments:

POINT I

THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY ON THE APPROPRIATE LESSER-INCLUDED OFFENSE OF CRIMINAL TRESPASS VIOLATED DEFENDANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO A FAIR TRIAL. [U.S. Const., amends. VI, XIV; N.J. Const., art. I, ¶ 1, 9 and 10]. (Not Raised Below).

POINT II

BECAUSE THE [TRIAL COURT] FAILED TO INSTRUCT
THE JURY THAT IT MUST BE UNANIMOUS WITH
RESPECT TO THE UNLAWFUL ACT ELEMENT OF
BURGLARY, AND THE VERDICT SHEET DID NOT
REQUIRE THE JURY TO SPECIFY WHICH UNLAWFUL ACT
[DEFENDANT] INTENDED TO COMMIT, THE DANGER OF
A PATCHWORK VERDICT REQUIRES REVERSAL. [U.S.
Const., amends. V, VI, XIV; N.J. Const., art.
I, ¶1, 9 and 10]. (Not Raised Below).

POINT III

THE IMPROPER ADMISSION OF B.M.'S HEARSAY TEXT
MESSAGES WITHOUT A LIMITING INSTRUCTION, AND
THE UNNECESSARY ADMISSION OF EVIDENCE OF A
COURT-ISSUED RESTRAINING ORDER PROHIBITING
[DEFENDANT] FROM B.M.'S APARTMENT, DENIED
[DEFENDANT] A FAIR TRIAL. [U.S. Const., amend.
XIV; N.J. Const., art. I, ¶ 1]. (Partially
Raised Below).

> A. Evidence of the court-issued
> restraining order prohibiting
> [defendant] from B.M.'s apartment
> should not have been allowed because
> it was unnecessary to the State's
> proofs and its prejudicial nature
> substantially outweighed its
> probative value[.]
>
> B. The [trial court] erroneously
> admitted B.M.'S testimony regarding
> hearsay text messages without a
> limiting instruction and without
> conducting a [Rule] 403(a)
> balancing test. (Partially Raised
> Below)[.]

POINT IV

DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE
PROSECUTOR IN SUMMATION SUGGESTED THAT
[DEFENDANT] HAD VIOLENTLY ATTACKED B.M. IN THE

PAST, MISREPRESENTED THE PERTINENT LAW AND SUGGESTED THAT THE DEFENSE WAS CONCOCTED. [U.S. Const., amend. XIV; N.J. Const., art. I, ¶ 1]. (Partially Raised Below).

POINT V

THE TRIAL WAS SO INFECTED WITH ERROR THAT EVEN IF EACH INDIVIDUAL ERROR DOES NOT REQUIRE REVERSAL, THE AGGREGATE OF THE ERRORS DENIED [DEFENDANT] A FAIR TRIAL. (Not Raised Below).

POINT VI

THE COURT ERRED IN FAILING TO MERGE THE SECOND-DEGREE SEXUAL ASSAULT CONVICTION INTO THE FIRST-DEGREE AGGRAVATED SEXUAL ASSAULT CONVICTION. ALTERNATIVELY, THE COURT VIOLATED THE YARBOUGH STANDARDS IN IMPOSING CONSECUTIVE SENTENCES ON THOSE CONVICTIONS.

POINT VII

THE COURT ERRED IN IMPOSING $3000[] IN SEX CRIME VICTIM TREATMENT FUND FINES WITHOUT CONSIDERING [DEFENDANT'S] ABILITY TO PAY THAT ASSESSMENT. (Not Raised Below).

POINT VIII

THE TRIAL COURT ERRED BY FAILING TO CREDIT [DEFENDANT] WITH ACCRUED JAIL CREDITS IN VIOLATION OF STATE V. HERNANDEZ AND [RULE] 3:21-8.

## I.

Defendant first argues the court erred by failing to instruct the jury on criminal trespass, N.J.S.A. 2C:18-3(a), as a lesser-included offense of burglary, N.J.S.A. 2C:18-2. Defendant did not request a criminal trespass instruction at trial but now contends

the court was required to sua sponte give the instruction because the evidence permitted the jury to conclude that defendant entered B.M.'s apartment without any intent to commit a crime therein.

Appropriate and proper jury charges, including instructions on lesser-included offenses, are essential to a fair trial. <u>State v. Savage</u>, 172 <u>N.J.</u> 374, 387 (2002); <u>see also</u> <u>State v. Gonzalez</u>, 444 <u>N.J. Super.</u> 62, 70 (App. Div.) (explaining that jury instructions play a critical role in criminal prosecutions), <u>certif. denied</u>, 226 <u>N.J.</u> 209 (2016). However, where a defendant fails to request a jury charge or object to instructions that fail to include it, we review for plain error and "disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" <u>State v. Funderburg</u>, 225 <u>N.J.</u> 66, 79 (2016) (quoting <u>R.</u> 2:10-2)); <u>State v. McKinney</u>, 223 <u>N.J.</u> 475, 494 (2015). "The mere possibility of an unjust result is not enough." <u>Funderburg</u>, <u>supra</u>, 225 <u>N.J.</u> at 79. The "error at trial must be sufficient to raise 'a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached.'" <u>Ibid.</u> (quoting <u>State v. Jenkins</u>, 178 <u>N.J.</u> 347, 361 (2004)).

Although a defendant's failure to object to jury instructions is generally "considered a waiver to object to the instruction[s] on appeal," <u>State v. Maloney</u>, 216 <u>N.J.</u> 91, 104 (2013), "a trial

court has an independent obligation to instruct on lesser-included charges when the facts adduced at trial clearly indicate that a jury could convict on the lesser while acquitting on the greater offense," Jenkins, supra, 178 N.J. at 361. Unless told it may convict of a lesser-included offense, a jury may find a defendant guilty of an uncommitted offense "simply because it prefers to convict on some crime rather than no crime at all." State v. Short, 131 N.J. 47, 54 (1993).

However, "[a] trial court need not 'scour the statutes to determine if there are some uncharged offenses of which the defendant may be guilty,'" Funderburg, supra, 225 N.J. at 81 (quoting State v. Brent, 137 N.J. 107, 118 (1994)), or "meticulously [] sift through the entire record . . . to see if some combination of facts and inferences might rationally sustain" a lesser-included charge. State v. Choice, 98 N.J. 295, 299 (1985). It is only when "the record clearly indicates a lesser-included charge — that is, if the evidence is jumping off the page — [that] the court [must] give the required instruction." State v. Denofa, 187 N.J. 24, 42 (2006); Funderberg, supra, 225 N.J. at 81.

It is well settled that criminal trespass is a lesser-included offense of burglary. State v. Clarke, 198 N.J. Super. 219, 225-26 (App. Div. 1985). Both criminal trespass and burglary require the State to establish that a defendant entered a structure without a

11                                              A-5810-12T2

license or privilege to do so. See N.J.S.A. 2C:18-2; N.J.S.A. 2C:18-3(a). Burglary, however, requires proof of an additional element: that the defendant enter the structure with the intent to commit an offense therein. See N.J.S.A. 2C:18-2; State v. Singleton, 290 N.J. Super. 336, 341 (App. Div. 1996).

Defendant argues the court erred by failing to provide an instruction on criminal trespass because the evidence clearly indicated defendant entered B.M.'s apartment without a purpose to commit an offense therein. Thus, for the court to have had an obligation to sua sponte charge the lesser-included offense of criminal trespass there must have been evidence clearly indicating defendant had an intent upon entering B.M.'s apartment other than to commit an offense therein. See Funderburg, supra, 225 N.J. at 82.

We have carefully reviewed the record and reject defendant's argument. Defendant's contention that he entered the apartment with an intent only to have consensual sex with B.M. is unsupported by any evidence clearly indicating that was the case. Nor does the evidence B.M. sent him text messages in the days prior to the incident show he entered her apartment with an intent other than to commit a crime therein. No evidence was presented concerning the substance of the text messages and therefore it is unknown how or if they relate to defendant's entry into the apartment.

A-5810-12T2

We are also not persuaded by defendant's argument that the court was obligated to provide a sua sponte charge on criminal trespass based upon the lack of testimony indicating there was a forced entry into B.M.'s apartment. Defendant's means of entry into the apartment did not establish his intent upon entry, and the lack of evidence of a forced entry, when considered in the context of all of the other evidence, did not present the court with a clear indication defendant lacked an intent to commit a crime upon his entry into the apartment. Thus, lack of a forced entry did not provide the court with evidence "jumping off the page" sufficient to warrant a sua sponte charge on criminal trespass. Funderburg, supra, 226 N.J. at 81.

We similarly reject defendant's assertion that Brown's opinion that B.M.'s physical injuries were inconsistent with a sexual assault required a lesser-included criminal trespass charge. Brown did not testify that B.M.'s injuries were inconsistent with a sexual assault, but rather, she stated only that the injuries were inconsistent with the type of physical assault B.M. described. Brown also testified she was not offering an opinion as to whether a sexual assault occurred. Moreover, Brown's testimony is wholly unrelated to defendant's intent upon entering B.M.'s apartment and therefore did not provide a clear

13                                                    A-5810-12T2

indication to the trial court that a criminal trespass charge was required.

In sum, defendant's attempt to weave the text messages, a lack of evidence of forced entry, and Brown's testimony into an obligation for the court to sua sponte charge the jury on criminal trespass is without merit. The court has no responsibility to sift through the evidence in search of a basis for a lesser-included charge that was neither requested nor clearly indicated by the record. Choice, supra, 98 N.J. at 299; Funderberg, supra, 225 N.J. at 81.

## II.

Defendant next argues the court deprived him of his constitutional right to a unanimous verdict on the burglary charge. More particularly, defendant claims the court erred by instructing the jury it could find defendant guilty of burglary if it determined defendant entered B.M.'s apartment with the intent to commit any of the crimes alleged in the other counts of the indictment.[3] Defendant argues the court should have required that

---

[3] The court instructed the jury it could find defendant guilty of burglary if he entered B.M.'s apartment with an intent to commit the offenses charged in "[c]ounts 1, 2, 3, 4, 5, 7, 8 and 9." The court did not reference counts six or ten. Although the court made reference to count eight, which charged defendant with fourth-degree violating a court order, that charge was not presented to the jury during the first phase of the bifurcated trial and the

the jury reach a unanimous verdict as to which particular offense it found defendant intended to commit upon his entry into B.M.'s apartment. We disagree.

In State v. Robinson, 289 N.J. Super. 447 (App. Div.), certif. denied, 146 N.J. 497 (1996), we rejected the identical argument defendant makes here. To commit a burglary there must be an unauthorized entry into the premises with a purpose to commit an offense, N.J.S.A. 2C:18-2(a), which we explained "has been interpreted broadly to mean 'any offense.'" Robinson, supra, 289 N.J. Super. at 453. We held that

> where the circumstances surrounding the unlawful entry do not give rise to any ambiguity or uncertainty as to a defendant's purpose in entering a structure without privilege to do so, so long as those circumstances lead inevitably and reasonably to the conclusion that some unlawful act is intended to be committed inside the structure, then specific instructions delineating the precise unlawful acts intended are unnecessary.
>
> [Id. at 458.]

---

court did not instruct the jury on the elements of the offense until the second phase of the bifurcated trial. As such, the jury was not instructed that it could convict defendant of burglary if it found beyond a reasonable doubt that he entered B.M.'s apartment with the intent to commit the offense of violating a court order therein. We are therefore not confronted with the issue we addressed in State v. Marquez, 277 N.J. Super. 162 (App. Div. 1994), certif. denied, 141 N.J. 99 (1995). Defendant does not argue otherwise.

Here, the court tracked the Model Jury Charge on burglary that is consistent with our holding in Robinson. See Model Jury Charge (Criminal), "Burglary in the Second Degree," (2016). The jury was instructed defendant could be found guilty of burglary if he intended to commit any of the other offenses charged in the indictment at the time of his unauthorized entry into B.M.'s apartment. Moreover, the evidentiary record does not permit a reasonable conclusion that defendant entered the apartment for any lawful reason other than the commission of an offense.[4]

We also reject defendant's reliance on Gonzalez, supra, where we found that a jury charge repeatedly employing the phrase "and/or" rendered it impossible to determine if the jury unanimously agreed the defendant was guilty as an accomplice or co-conspirator in a robbery or an aggravated assault, or both. 444 N.J. Super. at 75-76. Our holding in Robinson establishes that to prove a defendant committed a burglary in violation of N.J.S.A. 2C:18-2, it is only necessary that the jury unanimously agree a defendant intended to commit an offense at the time of the unauthorized entry into a structure, and that unanimity as to the

_____

[4] As previously noted, we reject defendant's argument that the evidence showed he entered B.M.'s apartment to engage in consensual sex with B.M., as this contention is unsupported and contradicted by the trial record.

A-5810-12T2

specific offense is not required. Robinson, supra, 289 N.J. Super. at 454-55. Thus, the unanimity issue which required the reversal in Gonzalez is not extant here.

Because the evidence leads to an inevitable and reasonable conclusion that defendant entered the apartment with the purpose to commit an offense therein,[5] it was unnecessary for the court to require that the jury unanimously agree as to the specific offense he intended to commit. Ibid.

### III.

Defendant also argues the court made two erroneous evidentiary rulings. First, defendant asserts the court erred in admitting evidence of a court-issued restraining order barring defendant from B.M.'s apartment. Second, he claims the court improperly admitted two text messages sent by B.M. based on a misapplication of the "state of mind" exception to the hearsay rule, N.J.R.E. 803(c)(3), without conducting a N.J.R.E. 403(a) balancing test or providing a limiting instruction.

---

[5] We are not persuaded by defendant's assertion that there was no evidence supporting a finding that he entered the apartment with the purpose to commit the offenses of possession of a weapon for an unlawful purpose, theft, and criminal mischief. There was substantial evidence supporting defendant's conviction of those offenses and permitting the reasonable inference that defendant entered the apartment with the intent to commit those offenses, as well as the sexual assault, simple assault, false imprisonment, and other offenses for which he was convicted.

"A trial court's ruling on the admissibility of evidence is reviewed on appeal for abuse of discretion." State v. Rose, 206 N.J. 141, 157 (2011). Under this standard, the trial court's decision to admit evidence should not be overturned "unless it can be shown that the trial court palpably abused its discretion, that is, that its finding was so wide [of] the mark that a manifest denial of justice resulted." State v. Lykes, 192 N.J. 519, 534 (2007) (alteration in original) (quoting Verdicchio v. Ricca, 179 N.J. 1, 34 (2004)). If the trial court does not determine the admissibility of evidence under the correct legal standard, however, its decision is not afforded any deference and we review the issue de novo. State v. Reddish, 181 N.J. 553, 609 (2004).

The Restraining Order

Prior to the June 19, 2010 incident, B.M. obtained an FRO which barred defendant from entering her apartment. Before trial, defendant moved to preclude the State from introducing any evidence concerning the FRO and offered to stipulate that defendant was not permitted to enter the apartment. The State rejected defendant's proposal and sought to introduce testimony from a court official that there was an order barring defendant's presence at the apartment. The court denied defendant's motion based upon our holding in State v. Silva, 378 N.J. Super. 321 (App. Div. 2005), finding that evidence of the order was admissible as relevant to

whether defendant was authorized to enter B.M.'s apartment. Defendant argues the court's ruling and the admission of the evidence during trial constituted error.

In Silva, we reversed a trial court's ruling in a burglary case that barred the State from introducing evidence concerning a restraining order. Id. at 323. We found that the evidence was relevant because it established the defendant was not licensed to enter the premises, but directed that the order be presented "in a sanitized fashion, stripped of any connection to any incident of domestic violence." Id. at 326-27. We instructed that "to avoid any possibility of mischievous speculation, the trial court should instruct the jury, using clear and emphatic language, that they are not to engage in any conjecture as to the legal or factual basis for the restraints." Id. at 327; see also State v. Castagna, 400 N.J. Super. 164, 186 (App. Div. 2008) (admitting evidence of a restraining order to prove motive subject to a limiting instruction advising the jury that the evidence could not be considered as proof the defendant committed any act of violence, and could not speculate as to the order's legal or factual basis).

Here, the court properly limited the admission of the evidence concerning the FRO and provided a detailed limiting instruction to the jury. The court only permitted testimony of the order's existence without reference to the circumstances that gave rise

19

to its entry, and provided a limiting instruction in accordance with the requirements of <u>Silva</u>. We discern no abuse of the court's discretion in its admission of the testimony, and no error in the court's careful and comprehensive jury instruction.

### B.M.'s Text Messages

During a pretrial motion, defendant objected to the State's introduction of text messages B.M. sent on July 19, 2010. Defendant argued the text messages impermissibly suggested he engaged in prior acts of harassment against B.M. The State argued the messages were relevant because they refuted defendant's contention that on June 19, 2010, B.M. had consensual sex with him. On appeal, defendant argues that the court's admission of two of the text messages sent by B.M. in the hours preceding the June 19, 2010 incident was erroneous and requires a reversal of his convictions.

The first text message was sent by B.M. to her neighbor, J.W., stating:

> Can you keep an eye on my house? [I will] be gone all day and he [knows] it and he know[s] [I will] be at the field all day.

The second text was sent by B.M. to a woman who lived across the street, stating:

> If [you are] home today can you please watch my house really good[?] [I will] be at the baseball field all day and my ex know[s] it.

The trial court initially reserved decision concerning the admissibility of the texts, explaining generally that "data extracted from the victim's phone may be admitted as proof of defendant's motive, state of mind or intent." The court later ruled the texts were admissible and evidence concerning these texts was admitted at trial.[6]

Defendant argues the court erred in finding the text messages admissible under N.J.R.E. 803(c)(3), the state of mind exception to the hearsay rule. For the first time on appeal, defendant argues the court further erred by not conducting a balancing test under N.J.R.E. 403 to determine if the probative value of the evidence was substantially outweighed by its prejudicial effect, and by failing to provide the jury with a limiting instruction on the proper and prohibited uses of the evidence.

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," N.J.R.E. 801, and "is not admissible except as provided by [the Rules of Evidence] or by other law," N.J.R.E. 802. One such exception to the hearsay rule is the "state of mind" exception, N.J.R.E. 803(c)(3), which permits

---

[6] The court ordered that the two text messages were admissible subject to the redaction of statements in the messages that defendant knew B.M. would not be home because he stole B.M.'s daughter's baseball schedule. The State agreed.

an out-of-court "statement made in good faith of the declarant's then existing state of mind, emotion, sensation or physical condition (such as intent, plan, motive, design, mental feeling, pain, or bodily health)." For an out-of-court statement to qualify for admission under N.J.R.E. 803(c)(3), "the declarant's state of mind must be 'in issue.'" State v. McLaughlin, 205 N.J. 185, 206 (2011) (citation omitted).

Our Supreme Court recently addressed the state of mind exception in the context of a victim's expression of fear, noting the exception "does not broadly allow admission of a victim's recounting of a defendant's threats." State v. Scharf, 225 N.J. 547, 569 (2016). A victim's hearsay statements of fear that reflect on the defendant's state of mind are not admissible under the state of mind exception. State v. Benedetto, 120 N.J. 250, 257 (1990). However, if a victim's statement that she feared the accused is proffered, for example, to rebut a claim that the victim's death was the result of an accident or suicide, such declarations are admissible provided they are relevant. Scharf, supra, 225 N.J. at 570.

The State proffered B.M.'s text messages to establish she did not consent to defendant's entry into her apartment on June 19, 2010, and to counter defendant's assertion that what occurred in the apartment was consensual. The trial court admitted over defense

counsel's objection the text messages "as proof of defendant's motive, state of mind or intent."

The court's determination that B.M.'s texts were admissible under N.J.R.E. 803(c)(3) to establish defendant's state of mind was clearly in error. See McLaughlin, supra, 205 N.J. at 206; Benedetto, supra, 120 N.J. at 257. But we are satisfied that the texts were otherwise admissible to demonstrate B.M.'s state of mind on June 19, 2010. The text messages did not make any express references to any prior bad acts on the part of defendant. Instead, they showed B.M. did not want defendant at her apartment and that B.M. was concerned defendant might appear there in her absence. The messages were highly probative because they rebutted defendant's claim that his entry into B.M.'s apartment and the sexual intercourse between them on June 19, 2010, was consensual. See Scharf, supra, 225 N.J. at 577 (finding murder victim's hearsay statements about fearing defendant "were directly relevant and were of assistance to the jury in its assessment of the likelihood" that the victim would voluntarily accompany the defendant). We are therefore satisfied that although the court erred in its reasoning for admitting the text messages, the texts were properly admitted to show B.M.'s state of mind in order to refute defendant's contention she consented to his entry into her apartment. See Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001) (explaining

23                                         A-5810-12T2

"appeals are taken from orders and judgments and not from . . . reasons given for the ultimate conclusion").

Moreover, during the trial the State never argued the text messages demonstrated defendant's state of mind. Instead, the State argued only that the text messages showed B.M. was of such a state of mind that she would not have consented to his entry into her apartment. The text messages were "relevant to [an] assessment[] of [B.M.'s] actions," and thus, "relevant in the assessment of the truth" of defendant's assertion that he had consensual interactions with B.M. on June 19, 2010. Scharf, supra, 225 N.J. at 570.

However, during B.M.'s testimony about the texts, she stated twice that she sent them because she feared defendant would break into her apartment. In one instance, she said she sent the texts because she was fearful he would break into her apartment "again." The testimony went beyond the language of the text messages themselves, but there was no objection or request to strike the testimony.

Defendant argues for the first time on appeal that B.M.'s testimony concerning the texts was improper and that its admission requires a reversal of his convictions. "Generally, arguments about the prejudicial nature of individual statements should have been made to the trial court." Id. at 577. Because defendant did

24

not object to the testimony, we review the admission of the testimony for plain error. R. 2:10-2; State v. Reeds, 197 N.J. 280, 298 (2009).

B.M.'s testimony concerning her fear that defendant would break into her apartment, and would do so "again," was unnecessary, exceeded the permissible use of the text messages to show plaintiff's state of mind, and impermissibly suggested defendant committed a prior bad act. See N.J.R.E. 404(b); Rose, supra, 206 N.J. at 159 (explaining that evidence of prior bad acts is generally inadmissible unless it is "material to a non-propensity purpose" and "its probative value is not outweighed by the risk of prejudice"). Based on our review of the record, however, we are not convinced B.M.'s testimony was clearly capable of producing an unjust result.

We observe that defendant's failure to object may reflect that he did not perceive B.M.'s testimony as prejudicial. State v. Krivacska, 341 N.J. Super. 1, 42-43 (App. Div.) (concluding a trial judge's failure to provide a limiting instruction was not plain error in part because defendant's "failure to object signifie[d] that the error belatedly claimed was actually of no moment"), certif. denied, 170 N.J. 206 (2001), cert. denied, 535 U.S. 1012, 122 S. Ct. 194, 152 L. Ed. 2d 510 (2002).

Further, evidence of defendant's guilt, independent of B.M.'s testimony as to why she sent the text messages, was overwhelming. The condition of B.M.'s apartment was consistent with the violent struggle B.M. described. There was blood found in her bedroom and kitchen, a hole in her bedroom wall, and knife cuts through her furniture. J.W. testified that B.M. appeared distraught at her doorway at 3:30 a.m., naked below the waist, and crying that defendant had "raped" her. The treating medical personnel observed that B.M. had physical injuries such as bruising on her face and defendant's DNA was found inside B.M.'s vagina. In addition, defendant's counsel conceded at trial that he entered the apartment, cut the furniture with a knife, and "slapped" B.M. "around."

The State did not rely on B.M.'s statements about her fear of defendant breaking into her apartment to suggest defendant was a bad person or previously committed wrongful acts against her. The prosecutor did not reference the testimony during her summation. Instead, the prosecutor argued only that the text messages demonstrated B.M. did not want defendant to be in her apartment. The prosecutor argued to the jury that "[B.M.] didn't want [defendant] there because she texted [J.W.] and another friend that very day . . . . Why would she do that? She texted . . . to say, I don't want him there."

Based on the circumstances presented and defendant's failure to object to B.M.'s testimony, we are not convinced B.M's momentary and singular reference in the course of a lengthy trial to her fear that defendant might break into her apartment "again" was capable of producing an unjust result. We have carefully considered the evidentiary record and are satisfied there was "overwhelming proof" of defendant's guilt "independent of the other-crimes evidence" and that admission of B.M.'s testimony was not clearly capable of producing an unjust result. State v. Gillispie, 208 N.J. 59, 93 (2011).

## IV.

Defendant next argues he was denied a fair trial because the prosecutor made improper comments during summation. Defendant contends the prosecutor misinformed the jury that, based on Brown's testimony, it could apply a subjective standard to B.M.'s perception of defendant's conduct in analyzing the counts on criminal restraint and sexual assault. Defendant also argues the prosecutor denigrated the defense of consent by suggesting it was concocted to overcome the State's DNA evidence showing defendant and B.M. had sexual intercourse.

"When an appellate court reviews a claim of prosecutorial misconduct with respect to remarks in summation, the issue presented is one of law," and the court's "review is plenary and

de novo." State v. Smith, 212 N.J. 365, 387 (2012). "[W]hile a prosecutor's summation is not without bounds, '[s]o long as [it] stays within the evidence and the legitimate inferences therefrom the Prosecutor is entitled to wide latitude in [] summation.'" State v. R.B., 183 N.J. 308, 330 (2005) (quoting State v. Mayberry, 52 N.J. 413, 437 (1968), cert. denied, 393 U.S. 1043, 89 S. Ct. 673, 21 L. Ed. 2d 593 (1969)).

In determining whether a prosecutor's comments during summation constitute prosecutorial misconduct, we "must consider several factors, including whether 'timely and proper objections' were raised; whether the offending remarks 'were withdrawn promptly'; and whether the trial court struck the remarks and provided appropriate instructions to the jury." Smith, supra, 212 N.J. at 403 (quoting State v. Frost, 158 N.J. 76, 83 (1999)). If prosecutorial misconduct occurred and the comments "were sufficiently egregious, a new trial is appropriate, even in the face of overwhelming evidence that a defendant may, in fact, be guilty." Id. at 404; see also State v. Wakefield, 190 N.J. 397, 446 (2007) ("[T]he issue for resolution is two-fold: whether the prosecutor committed misconduct, and, if so, 'whether the prosecutor's conduct constitutes grounds for a new trial.'" (quoting State v. Smith, 167 N.J. 158, 181 (2001))).

A prosecutor "should not make inaccurate legal or factual assertions during a trial." State v. Bradshaw, 195 N.J. 493, 510 (2008) (quoting Frost, supra, 158 N.J. at 85). "A prosecutor may comment on the facts shown by or reasonably to be inferred from the evidence." R.B., supra, 183 N.J. at 330 (quoting State v. Carter, 91 N.J. 86, 125 (1982)). "So long as the prosecutor's comments are based on the evidence in the case and the reasonable inferences from that evidence, the prosecutor's comments 'will afford no ground for reversal.'" Bradshaw, supra, 195 N.J. at 510 (quoting State v. Johnson, 31 N.J. 489, 510 (1960)).

Defendant argues that the prosecutor inaccurately stated in summation that Brown testified threats are to be interpreted based upon a victim's subjective point of view. Defendant claims the prosecutor's reference to Brown's testimony misstated the elements of sexual assault which, according to defendant, require the jury to determine whether the defendant reasonably believed the victim freely gave permission to the act of penetration.

We find no merit to defendant's claim. The prosecutor accurately represented Brown's testimony, which was not offered as a statement of any legal standard. The prosecutor did not suggest to the jury that Brown's testimony constituted the appropriate legal standard and, in fact, expressly advised the jury that Brown's testimony did not establish a legal standard.

29

In addition, the court accurately instructed the jury that it would define the legal standards to be applied during deliberations.

Defendant also claims the prosecutor improperly referenced Brown's testimony that "the mere presence of a person can be a threat if you have been on the receiving end of violent action from that person." Defendant argues that statement improperly suggested B.M. was previously victimized by defendant.

We are not persuaded by defendant's contention for two reasons. First, the prosecutor's statement precisely described Brown's trial testimony that was provided without objection. Secondly, the prosecutor's reference to Brown's testimony is unencumbered by any suggestion that defendant previously engaged in violent conduct. In contrast, the prosecutor relied on Brown's testimony to argue that the violence defendant employed on June 19, 2010, instilled fear in B.M. and constituted an exercise of control by defendant. The prosecutor repeated Brown's testimony, stating that if a victim has witnessed "violent action, just the presence [of the perpetrator] can be a threat and can be overpowering." In the next sentence, the prosecutor spoke only about defendant's violent conduct toward B.M. during the incident, and argued it constituted a threat against her. Contrary to defendant's contention, we find nothing in the prosecutor's

comments suggesting a prior violent relationship between B.M. and defendant.

Defendant also argues the prosecutor inappropriately suggested he "concocted" his defense that he and B.M. had consensual. Defendant challenges the prosecutor's statement:

> Remember what [] Brown said? DNA has kind of changed things and often now the defense has to be that the act was consensual because the DNA is there.

We do not find the prosecutor's statement to be improper. It accurately summarized Brown's trial testimony, which was provided without objection, and did not impermissibly denigrate the defense or "imply that defense counsel and defenses witnesses 'concocted'" the defense of consent. State v. Lazo, 209 N.J. 9, 29 (2012). The prosecutor argued that defendant first attempted to remove evidence of his DNA by requiring that B.M. take a shower and, after that proved unsuccessful, claimed B.M. consented to sexual intercourse. The prosecutor's comments found support in the evidence and addressed the credibility of defendant's consent defense. We are satisfied the comments were within the bounds of the "considerable leeway" afforded to counsel during closing arguments. Lazo, supra, 209 N.J. at 29; Smith, supra, 167 N.J. at 177.

Defendant claims the court committed three errors in its imposition of his sentence. He contends the court failed to merge his conviction for second-degree sexual assault (count three) with his conviction for first-degree aggravated sexual assault (count two), improperly imposed a $3000 SCVTF penalty, and did not award jail credits to which he was entitled. We consider each of the arguments in turn.

### Merger

Defendant argues his conviction for second-degree sexual assault (count three) should have been merged with his conviction for first-degree aggravated sexual assault (count two). The State contends merger was not required because the jury convicted defendant of two different acts of sexual assault and therefore separate sentences were appropriate. The State relies on State v. Fraction, 206 N.J. Super. 532, 536 (App. Div. 1985), certif. denied, 104 N.J. 434 (1986), where we held that the defendant's sexual assault convictions did not merge because they were based on separate acts of sexual assault.

"The doctrine of merger is based on the concept that 'an accused [who] committed only one offense . . . cannot be punished as if for two.'" State v. Tate, 216 N.J. 300, 302 (2013) (quoting State v. Davis, 68 N.J. 69, 77 (1975)). This principle has been

codified under N.J.S.A. 2C:1-8(a), which provides that when the same conduct can be used to establish a violation of multiple criminal offenses, a defendant can only be convicted of more than one offense in certain circumstances. There is no "single test" that has been universally accepted to determine when convictions merge, and "our courts have eschewed technisms and inflexibility in favor of the paramount considerations of 'fairness and fulfillment of reasonable expectations in the light of the constitutional and common law goals.'" Fraction, supra, 206 N.J. Super. at 538 (quoting State v. Currie, 41 N.J. 531, 539 (1964)).

The record required the merger of defendant's second-degree sexual assault conviction with his conviction for first-degree aggravated sexual assault. Unlike Fraction, the indictment here did not charge separate acts of sexual assault. See Fraction, supra, 206 N.J. Super. at 539. The indictment charged a single criminal episode during which aggravated sexual assault occurred, and the jury was not asked to make determinations as to whether defendant committed a sexual assault in the bedroom separate from its determination as to whether defendant committed sexual assault in the kitchen.

In contrast, the defendant in Fraction was charged with, and convicted of, separate and distinct acts of sexual assault. Ibid. The court found merger was not required because the "convictions

[were] not for the 'same conduct.'" Id. at 538 (quoting N.J.S.A. 2C:1-8(a)(1)). Here, they were. Defendant's second-degree sexual assault conviction, N.J.S.A. 2C:14-2(c)(1)), must merge with his conviction for first-degree aggravated sexual assault, N.J.S.A. 2C:12-2(a)(3), because they are based on identical conduct.[7] See State v. T.E., 342 N.J. Super. 14, 22 (App. Div.), certif. denied, 170 N.J. 86 (2001); State v. McCauley, 157 N.J. Super. 349, 354-55 (App. Div.) (finding two charges stemming from one ongoing criminal episode permit only one conviction and sentence), certif. denied, 77 N.J. 500 (1978).

We reject defendant's contention that the court's general unanimity instruction was inadequate because he was entitled to a specific unanimity instruction requiring the jury to determine the particular sexual assault he committed. Defendant did not request a unanimity instruction on any of the sexual assault charges. In the absence of such a request, "the failure so to charge does not necessarily constitute reversible error." State v. Parker, 124 N.J. 628, 637 (1991), cert. denied, Parker v. New Jersey, 503 U.S. 939,

---

[7] Because we conclude the court erred by failing to merge defendant's conviction on count three with count two, it is unnecessary to address defendant's argument that the court erred by imposing consecutive sentences on those offenses. Defendant does not argue the court erred in imposing a consecutive sentence on his conviction for fourth-degree violation of a court order under count eight.

112 S. Ct. 1483, 117 L. Ed. 2d 625 (1992). To determine if a specific unanimity charge is required, "[t]he core question is, in light of the allegations made and the statute charged, whether the instructions as a whole [posed] a genuine risk that the jury [would be] confused." State v. Gandhi, 201 N.J. 161, 193 (2010) (alterations in original) (quoting Parker, supra, 124 N.J. at 638). On review, we "examine two factors: whether the acts alleged are conceptually similar or are 'contradictory or only marginally related to each other,' and whether there is a 'tangible indication of jury confusion.'" Ibid. (quoting Parker, supra, 124 N.J. at 639).

Defendant does not allege, and the record does not reveal, any indication of jury confusion concerning the acts of sexual assault for which it found defendant guilty. Moreover, the State presented evidence of a "continuing course of conduct" consisting of conceptually identical acts that occurred in the bedroom and kitchen. This was not a case where the circumstances presented "a reasonable possibility that a juror will find one theory proven and the other not proven but that all of the jurors will not agree on the same theory." Parker, supra, 124 N.J. at 635 (quoting People v. Melendez, 274 Cal. Rptr. 599, 608 (Ct. App. 1990)). The court therefore did not err by failing to sua sponte provide a specific unanimity instruction on the sexual assault counts.

35

Sexual Crime Victim Treatment Fund Penalty

We agree with defendant's contention that the court erred by imposing the maximum SCVTF penalty under <u>N.J.S.A.</u> 2C:14-10 without considering the nature of the offense and defendant's ability to pay,[8] and by failing to make any findings supporting the imposition of the penalties imposed. <u>See</u> <u>State v. Bolvito</u>, 217 <u>N.J.</u> 221, 233-35 (2014); <u>R.</u> 1:7-4. We recognize that <u>Bolvito</u> was decided subsequent to defendant's sentencing, but that is irrelevant because its interpretation of the statute applies with equal force here; <u>N.J.S.A.</u> 2C:14-10 permits the imposition of a SCVTF penalty "up to" certain amounts, depending on the degree of the sexual offense for which the defendant was committed. The court here erred by imposing the maximum penalty without considering any factors relevant to a proper determination of the amount and without providing any reasons for its imposition of the maximum penalty.[9]

---

[8] The presentence investigation report showed that defendant's only asset was a civil judgment in the amount of $25,000 which he obtained in 2007 as the result of being the victim of a stabbing. His debts, which included an outstanding child support obligation of almost $49,000, exceeded $69,000.

[9] Based on our decision that count three must be merged into count two, on remand the court will be required to consider the appropriate SCVTF penalty to be imposed on count two only.

Jail Credits

The record does not support defendant's contention that the court erred in denying his request for additional jail credits. Defendant was arrested on June 20, 2010, and thereafter held in custody until he was sentenced. During that time, defendant served sentences on two other matters from July 20, 2010 to February 25, 2011, for a total of 220 days. Defendant asserts he was entitled to 220 days of jail credit for the time following his arrest on the charges here and during which he served his sentences on the other matters.

The award of jail credits presents an issue of law that we review de novo. State v. Hernandez, 208 N.J. 24, 48-49 (2011). Rule 3:21-8 provides that a "defendant shall receive credit on the term of a custodial sentence for any time served in custody in jail or in a state hospital between arrest and the imposition of sentence." A defendant is entitled to jail credits for time spent in presentence custody on multiple charges, but not for time accrued after the imposition of a custodial sentence. Hernandez, supra, 208 N.J. at 44-45. "[O]nce the first sentence is imposed, a defendant awaiting imposition of another sentence accrues no

more jail credit." Id. at 50.[10]  We are therefore satisfied the court correctly rejected defendant's request for 220 days of jail credit for the time he spent serving sentences on his other matters.

Defendant's remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

We affirm defendant's convictions, and remand for amendment of the judgment of conviction for merger of count three with count two[11] and for reconsideration of the amount of the SCVTF penalty to be imposed on count two. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[10] Defendant does not contend he is entitled to gap-time credit under N.J.S.A. 2C:44-5(b)(2). See generally State v. Joe, 228 N.J. 125 (2017).

[11] We find no basis to direct that the court reconsider its decision to deny the State's motion for an extended term.  The State did not appeal the court's denial of its extended term motion.