217 N.J. Super. 467 (1987)
526 A.2d 251
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EMIL RUSCINGNO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted April 13, 1987.
Decided May 8, 1987.
*469 Before Judges MORTON I. GREENBERG and GRUCCIO.
Alfred A. Slocum, Public Defender, attorney for appellant (Michele A. Adubato of Adubato & Jaffe, of counsel and on the brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondent (Edward R. Bonanno, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by: GRUCCIO, J.A.D.
Following a jury trial, defendant Emil Ruscingno was convicted of murder, N.J.S.A. 2C:11-3 a(1) and (2) (count one); possession of a knife under circumstances not manifestly appropriate for such lawful uses as it may have, N.J.S.A. 2C:39-5 d (count two), and possession of a knife for an unlawful purpose, N.J.S.A. 2C:39-4 d (count three). He was sentenced to a life term with a 30-year period of parole ineligibility on count one and an 18-month term on count two to run consecutively with the sentence imposed on count one. Count three was merged with count one for sentencing. The trial court also imposed a $10,000 Violent Crimes Compensation Board penalty on count one and a $25 penalty on count two.
On appeal Defendant contends:
1. The statement made by defendant to police should have been excluded from evidence.
2. The testimony of Detective Murray regarding defendant's post-arrest silence violated the Fifth Amendment right against self-incrimination. (Not raised below).
3. It was error for the court to admit into evidence certified copies of prior convictions of a witness.
4. Comments made by the prosecutor during summation were improper and inflammatory and deprived defendant of a fair trial. (Not raised below).

*470 5. It was plain error for the court to fail to charge the jury on the lesser-included offense of manslaughter [and aggravated manslaughter]. (Not raised below).
6. It was error for the court to fail to merge certain offenses.
We have carefully reviewed the record in light of the contentions and the arguments of counsel thereon and, except as to defendant's second and fifth points, find them clearly without merit. R. 2:11-3(e)(2).
Under point two, defendant contends that the testimony of Detective Murray regarding his post-arrest silence violated his Fifth Amendment privilege against self-incrimination. It is a well-established principle of criminal procedure that the State may not use defendant's post-arrest silence to establish guilt. Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); accord, State v. Deatore, 70 N.J. 100 (1976); State v. Lyle, 73 N.J. 403 (1977). There is no published New Jersey decision dealing with the admissibility of police testimony which indicates that defendant refused to answer further questions at a certain point during interrogation. However, federal courts have held that when a defendant chooses to waive his right to silence, police are entitled to testify concerning any incriminating statements that defendant made and describe not only the beginning of the interrogation but how it ended as well so that the jury will know the police testimony is complete. See Rowan v. Owens, 752 F.2d 1186, 1190 (7th Cir.1984), cert. den. ___ U.S. ___, 106 S.Ct. 2245, 90 L.Ed.2d 691 (1986); Jacks v. Duckworth, 651 F.2d 480, 483 (7th Cir.1981), cert. den. 454 U.S. 1147, 102 S.Ct. 1010, 71 L.Ed.2d 300 (1982); U.S. v. Williams, 556 F.2d 65, 67 (D.C. Cir.1977); U.S. v. Ivey, 546 F.2d 139, 144-145 (5th Cir.1977); U.S. v. Haro-Portillo, 531 F.2d 962, 963 (9th Cir.1976).
The testimony to which defendant objects is as follows:
PROSECUTOR: After he signed that his rights were read to him and he understood them, did you question him?

*471 WITNESS: Yes, sir, I did.
PROSECUTOR: What did you ask him?
WITNESS: I asked him any knowledge you might have pertaining to the homicide.
PROSECUTOR: What did he tell you?
WITNESS: He told me that he had responded to the Belleville Motor Lodge to visit his friend, the victim. But while he was there there was a knock at the door, two men entered the room. He was introduced to the two men as Carlos and James, a black male and a Spanish man. Shortly after that he went into the bathroom. He heard a commotion. When he heard the commotion, he came outside and the black male had escaped out of the window and the Spanish man attacked him with a knife.
PROSECUTOR: When he told you that what did you do to him?
WITNESS: I confronted him with other facts that we had.
PROSECUTOR: Could you tell us specifically what you told him?
WITNESS: I told him we had a witness who saw him exit a vehicle with another male, climb the steps and knock on the door and enter the room of 52.
PROSECUTOR: Did you bring the eyewitness in to confront him with that witness?
WITNESS: Yes, I did.
PROSECUTOR: Who was that witness?
WITNESS: Detective James Cramer of the Essex County Sheriff's Department.
PROSECUTOR: And after you confronted him with these facts that conflicted his story, what did he do then?
WITNESS: He refused to answer any further questions.
Our review of the record clearly demonstrates that this testimony was not elicited to draw unfavorable inference to the fact that defendant decided to remain quiet at that point; rather, the testimony shows that the interrogation had a logical ending. See U.S. v. Collins, 652 F.2d 735, 740 (8th Cir.1981), cert. den. 455 U.S. 906, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982). Without Murray's statement that defendant wished to say no more at a certain point, his description of the interrogation would have been incomplete. See Owens, supra, 752 F.2d at 1190. Moreover, our review of the record reveals that the State in no way used defendant's statement that he wished to remain silent against him nor was it used for impeachment purposes or *472 during closing. Duckworth, supra, 651 F.2d at 483. There was no error in the admission of this testimony.
Next, defendant contends that the trial court should have sua sponte provided a manslaughter or aggravated manslaughter charge to the jury and that its failure to do so is cause for reversal.
The common law doctrine that a defendant may be found guilty of a lesser offense necessarily included in the greater offense charged in the indictment is well-recognized in our State. State v. Saulnier, 63 N.J. 199, 205 (1973). However, the trial court does not have the obligation on its own to meticulously sift through the entire record in every murder trial to see if some combination of facts and inferences might rationally sustain a manslaughter charge. State v. Choice, 98 N.J. 295, 299 (1985). "It is only when the facts `clearly indicate' the appropriateness of that charge that the duty of the trial court arises." Ibid.
Defendant argues that since he testified that an argument ensued between the victim and a third party which eventually resulted in the victim's death, a jury could "rationally conclude under those facts that there was passion/provocation present or that the argument escalated to the point where a weapon was drawn and one of the participants was stabbed and died as a result thereof," thus justifying a manslaughter charge. We reject this contention. The generally accepted rule is that "words alone, no matter how offensive or insulting, do not constitute adequate provocation to reduce murder to manslaughter." State v. Crisantos (Arriagas), 102 N.J. 265, 274 (1986). See also 2 C. Torcia, Wharton's Criminal Law, 245 (14th ed. 1979); State v. Bonano, 59 N.J. 515, 524 (1971); State v. King, 37 N.J. 285, 301 (1962). That being the case, the fact that the argument was between a third party and the victim makes it even less likely that defendant was entitled to the manslaughter charge.
*473 Another common law rule was that "mutual combat under certain circumstances could constitute adequate provocation to reduce murder to manslaughter." Crisantos, supra, 102 N.J. at 274, citing, Model Penal Code, § 210.3 comment at 57 (Official Draft and Revised Comments 1980). However, "to reduce the offense from murder to manslaughter, the contest must have been waged on equal terms and no unfair advantage taken of the deceased.... The offense is not manslaughter but murder where the defendant alone was armed...." Ibid. See also 1 O. Warren & B. Bilas, Warren on Homicide, 473-476 (Perm. ed. 1938). Nowhere in the record is there any indication that the victim was armed. Nor does defendant contend there was mutual combat between him and the victim; rather, defendant's testimony is that the person who went with him to the motel room pulled a knife on the victim once they were inside the room. Consequently, the record does not "clearly indicate" the appropriateness of a charge for passion/provocation manslaughter.
On appeal defendant cites N.J.S.A. 2C:11-4 for his position that aggravated manslaughter should have been charged and argues that "it would not be impossible for a jury to conclude that there was no intent to kill but that death resulted from reckless conduct demonstrating extreme indifference to human life." We find, however, that the record does not support such an argument, particularly in light of the fact that no objection to the court's charge was made nor was a jury instruction on aggravated manslaughter ever requested. Indeed, "[t]he absence of such a request [for an aggravated manslaughter charge] by defendant may reflect not the willingness to gamble between a murder conviction and an acquittal, but, rather, a conclusion on the part of the defense that the facts that might come out, relevant to the manslaughter charge, would make a conviction of murder much more likely." Choice, supra, 98 N.J. at 300. (Emphasis in original). Our *474 careful review of the record leads us to the conclusion that the jury was neither confused nor unsure of the issues before them.
Also in support of his contention that an aggravated manslaughter charge was warranted, defendant relies on State v. Powell, 84 N.J. 305 (1980), where the court held that "a trial judge must charge a lesser included offense when the facts on the record would justify a conviction" for that offense even where there has been no request by defendant to do so. In Powell, however, defense counsel pursued four inconsistent defenses: alibi, accidental shooting, self-defense and provocation/passion. Id. at 309. Moreover, defendant in Powell did request a manslaughter instruction. Id. at 317. Here, to the contrary, the record shows that defendant's defense was that he was not involved in the fight that resulted in the victim's death and, furthermore, no request for either a manslaughter or an aggravated manslaughter charge was made. In deciding whether or not a manslaughter instruction should have been given, the Powell court noted that in Pennsylvania a defendant charged with murder "is automatically entitled to an instruction on manslaughter whether or not evidence of mitigation exists in the record." Id. at 316. However, the court specifically said, "We do not advocate use of such an automatic rule in this State." Ibid.
Thus, we conclude that even if the absence of a manslaughter or an aggravated manslaughter charge was error, it does not rise to the level of plain error. Whatever else defendant may believe is "murky, it is clear that the facts here do not `clearly indicate the possibility that the crime was manslaughter ...'" Choice, supra, 98 N.J. at 299. (Emphasis in original).
In sum, we are satisfied that defendant received a fair trial. He is entitled to that, not a perfect trial.
Affirmed.