**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0705-18T1

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

BRIAN M. MERTZ,

 Defendant-Appellant.

_____

Submitted June 1, 2020 – Decided July 2, 2020

Before Judges Messano and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 09-06-0488.

Joseph E. Krakora, Public Defender, attorney for appellant (Howard W. Bailey, Designated Counsel, on the brief).

Christine A. Hoffman, Acting Gloucester County Prosecutor, attorney for respondent (Dana R. Anton, Special Deputy Attorney General/Acting Senior Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Brian M. Mertz appeals from an order denying his post-conviction relief (PCR) petition without an evidentiary hearing. Having considered the record and the parties' arguments in light of the applicable legal principles, we affirm.

I.

On October 25, 2012, a jury convicted defendant of the first-degree knowing and purposeful murder of J.W. In our decision affirming defendant's conviction and sentence on his direct appeal, State v. Mertz, No. A-3704-12 (App. Div. Dec. 29, 2015), we described the facts established by the trial evidence. We briefly restate and summarize those facts to provide context for the issues defendant raises on appeal.

On May 26, 2002, J.W.'s body was found in a field across the street from a motel in West Deptford. Her boots were on the wrong feet; her blouse was inside out; and her brassiere was unhooked. An autopsy showed J.W. was beaten, strangled, and suffered from multiple stab and slash wounds. A vaginal swab revealed the presence of semen.

Law enforcement officers looked in rooms at the motel but did not find evidence of any struggles or blood. A yellow Honda CR-X vehicle registered

2

to defendant was in the motel parking lot. Officers spoke to defendant, who was staying at the motel, and he appeared calm.

The New Jersey State Police Lab tested the semen. During the subsequent investigation, buccal swabs were obtained from approximately one hundred men, but none resulted in a positive match to the DNA obtained from the semen.

In July 2007, law enforcement received information from the New Jersey State Police Lab that resulted in an investigation of defendant. During a July 16, 2007, interview with detectives, defendant reported that at the time of J.W.'s murder he was a heavy drug user, owned a yellow Honda vehicle, and was staying at the motel. Defendant was shown a picture of J.W., but he denied knowing her. Defendant was also informed his DNA was found in J.W.'s body, but he denied having sex with her and ever having been with her. The interview ended when defendant requested an attorney.

Defendant returned to the police station the next day, and the interview continued. He explained he had been "petrified" while giving his statement the prior day, and he said he met J.W. at a bar late in the evening of May 24, 2002, had sex with J.W. in his car, and then dropped her off at a trailer park near the motel. Defendant said he went to work the next day and was paid off the books in cash. He denied killing J.W. and provided a buccal swab to the officers.

A-0705-18T1

Testing of the swab revealed defendant's DNA profile "matched the major contributor DNA profile" obtained from the semen recovered from J.W.

Defendant was arrested and charged with J.W.'s murder and other offenses. In December 2011, officers executed a search warrant at the residence where defendant lived with his grandmother and seized a pocketknife found in a tool chest in the garage.

Following his arrest, defendant was held in custody with H.L. in the Gloucester County Jail. H.L. testified at trial that defendant said he had been staying in a "hotel" and had a relationship with J.W., which they kept secret because of defendant's girlfriend. H.L. described the yellow Honda CR-X defendant owned at the time and testified defendant said he "was the one that did it and that he was going to get away with it [because] they couldn't prove that he did it. There was no evidence."

H.L. also testified defendant said he and J.W. were getting high and having sex and, when J.W. refused his request for money to buy drugs, he hit her several times with his hands and stabbed her with a knife. H.L. testified defendant mentioned using a fishing knife that would not be found because he hid it.

A-0705-18T1

According to H.L., defendant also said he needed an alibi, so he went to work on the day following the murder and to his grandmother's house to change his clothes and hide the knife. H.L. said defendant told him J.W. wore her shoes on the wrong feet and her shirt was inside out. H.L. denied reviewing any discovery materials related to the case against defendant and testified he learned all of the information about J.W.'s murder from defendant.

The trial court granted defendant's motion for acquittal on certain charges, and the jury convicted defendant of first-degree knowing and/or purposeful murder. N.J.S.A. 2C:11-3(a)(1) and/or (2). The court sentenced defendant to a fifty-year custodial term subject to the requirements of the No Early Release Act, N.J.S.A. 2C:43-7.2. As noted, we affirmed defendant's conviction and sentence on his direct appeal, Mertz, slip op. at 1, 23, and the Supreme Court denied defendant's petition for certification, State v. Mertz, 224 N.J. 529 (2016).

In February 2017, defendant filed a PCR petition and was assigned counsel. In his pro se petition, defendant claimed his trial counsel was ineffective by failing to: "request appropriate lesser-included offenses"; "object to improper and misleading remarks by the prosecutor during summation"; "object to misleading and improper jury instructions given by the court"; "call and properly prepare defense witnesses for testimony"; "investigate

witnesses . . . [and] other defenses"; and "put the State's case to any meaningful adversarial test."[1] Defendant's counsel's brief to the PCR court argued trial counsel was also ineffective by failing to: effectively challenge the State's argument defendant and J.W. argued about drugs; object to the introduction of evidence about the recovery of the knife; adequately investigate the crime scene evidence; and challenge the testimony of the State's expert witness in forensic pathology. Defendant's PCR counsel also argued trial counsel was ineffective by failing to object to a police lieutenant's testimony that the July 16, 2007, interview of defendant ended when defendant "asked for a lawyer." PCR counsel also generally alleged defendant's appellate counsel was ineffective by failing to raise the same issues on appeal.

Following oral argument on the PCR petition, the court issued a detailed written opinion finding defendant failed to sustain his burden of establishing a prima facie case of ineffective assistance of counsel on each of his claims. The court also found defendant's claim his counsel was ineffective by failing to object to testimony that his July 16, 2007 interview with police ended because

---

[1]  Defendant's petition also generally alleged his appellate counsel was ineffective, but it did not identify any specific deficiencies in appellate counsel's representation.

A-0705-18T1

he "asked for a lawyer" was barred by <u>Rule</u> 3:22-4(a) because it could have been raised at trial and on defendant's direct appeal.

The court entered an August 10, 2018 order denying the PCR petition without an evidentiary hearing. This appeal followed.

Defendant presents the following arguments for our consideration:

> POINT I
>
> THE POST-CONVICTION RELIEF COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING TO FULLY ADDRESS HIS CONTENTION THAT HE FAILED TO RECEIVE ADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL.
>
> A. THE PREVAILING LEGAL PRINCIPLES REGARDING CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL, EVIDENTIARY HEARINGS, AND PETITIONS FOR POST-CONVICTION RELIEF.
>
> B. DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO OBJECT TO QUESTIONING ABOUT HIS CONSTITUTIONAL RIGHT TO REMAIN SILENT.
>
> POINT II
>
> THE COURT MISAPPLIED ITS DISCRETION IN APPLYING <u>R.</u> 3:22-4 AS A PROCEDURAL BAR AGAINST THE DEFENDANT'S FILING FOR POST-CONVICTION RELIEF.

II.

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee a defendant in a criminal proceeding the right to the assistance of counsel in his or her defense. The right to counsel includes "the right to the effective assistance of counsel." State v. Nash, 212 N.J. 518, 541 (2013) (quoting Strickland v. Washington, 466 U.S. 668, 686 (1984)).

In Strickland, the Court established a two-part test, later adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), to determine whether a defendant has been deprived of the effective assistance of counsel. Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 58. Under the first prong of the Strickland standard, a petitioner must show that counsel's performance was deficient. 466 U.S. at 687. It must be demonstrated that counsel's handling of the matter "fell below an objective standard of reasonableness," and that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687-88.

Under the second prong of the Strickland standard, a defendant "must show that the deficient performance prejudiced the defense." Id. at 687. There must be a "reasonable probability that, but for counsel's unprofessional errors,

8

the result of the proceeding would have been different." Id. at 694.  A petitioner must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.  "The error committed must be so serious as to undermine the court's confidence in the jury's verdict or result reached." State v. Chew, 179 N.J. 186, 204 (2004) (citing Strickland, 466 U.S. at 694).

"With respect to both prongs of the Strickland test, a defendant asserting ineffective assistance of counsel on PCR bears the burden of proving his or her right to relief by a preponderance of the evidence." State v. Gaitan, 209 N.J. 339, 350 (2012) (citing State v. Echols, 199 N.J. 344, 357 (2009); State v. Goodwin, 173 N.J. 583, 593 (2002)).  A failure to satisfy either prong of the Strickland standard requires the denial of a PCR petition. Strickland, 466 U.S. at 700; Nash, 212 N.J. at 542; Fritz, 105 N.J. at 52.

A PCR court should grant an evidentiary hearing if a defendant establishes a prima facie claim in support of PCR. State v. Preciose, 129 N.J. 451, 462-63 (1992).  "To establish a prima facie claim of ineffective assistance of counsel, a defendant must demonstrate the reasonable likelihood of succeeding under the" Strickland standard. Id. at 463.

We review the legal conclusions of a PCR court de novo. State v. Harris, 181 N.J. 391, 419 (2004) (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). The de novo standard of review applies to mixed questions of fact and law. Id. at 420. Where an evidentiary hearing has not been held, it is within our authority "to conduct a de novo review of both the factual findings and legal conclusions of the PCR court." Id. at 421. We apply that standard here.

Defendant's argument on appeal is limited to the PCR court's denial of his claim that his trial counsel was ineffective by failing to object to testimony that defendant asked for a lawyer during his July 16, 2007 interview with the police. More particularly, defendant asserts counsel should have objected during the following exchange at trial between the prosecutor and the lieutenant who participated in the interview:

> PROSECUTOR: Was [defendant] arrested and charged with anything [on July 16, 2007]?
>
> LIEUTENANT: No, he was not.
>
> PROSECUTOR: Do you know how he left the prosecutor's office and got home?
>
> LIEUTENANT: He was driven home.
>
> PROSECUTOR: By whom?

10

LIEUTENANT: Myself and another detective.

PROSECUTOR: Did you discuss the case, the substance of the case with [defendant] at all during that time period when you were driving with him home?

LIEUTENANT: No. Not at all.

PROSECUTOR: And why not?

LIEUTENANT: He asked for a lawyer. There was no reason to discuss it any further.

Defendant argues counsel should have objected to the testimony and requested a mistrial because the testimony implicated defendant's rights to counsel and to remain silent, and impermissibly and prejudicially suggested to the jury "he had something to hide and did not want to discuss." The PCR court rejected the contention, finding trial counsel's failure to object to the testimony did not constitute deficient performance under the first prong of the Strickland standard because evidence that the July 16, 2007 interview ended because defendant requested an attorney was proper and admissible. The PCR court also found defendant failed to satisfy the second prong of the Strickland standard because he made no showing the testimony was prejudicial.

In finding defendant's counsel's performance was not deficient, the PCR court relied on State v. Feaster, where our Supreme Court rejected a claim that trial testimony asserting the defendant's interview with the police ended because

"[h]e invoked his right to counsel" required reversal of the defendant's conviction. 156 N.J. 1, 73-75 (1998). The Court in Feaster noted with approval our decision in State v. Ruscingno, where we found admissible testimony a defendant invoked his right to remain silent because it "was not elicited to draw unfavorable inference to the fact that defendant decided to remain quiet at that point; rather, the testimony shows that the interrogation had a logical ending," 217 N.J. Super. 467, 470-71 (App. Div. 1987). Id. at 75. In Ruscingno, we determined the testimony that the defendant invoked his right to remain silent was admissible because without it, the officer's "description of the interrogation would have been incomplete." 217 N.J. Super. at 471.

In Feaster, the Court found "trial courts should endeavor to excise any reference to a criminal defendant's invocation of [the] right to counsel," but a trial court may "permit testimony explaining why an interview or interrogation was terminated" "in cases where the proffered testimony does relate substantial evidence regarding a defendant's statements about the underlying crime, such that a jury without further information would be naturally inclined to question why testimony regarding subsequent events was not offered." 156 N.J. at 75-76. The Court, however, noted such testimony is admissible "only if [it] is essential to the complete presentation of the witness's testimony and its omission

would be likely to mislead or confuse the jury." Id. at 76. The Court further explained that, where the testimony is admitted under such circumstances, "a cautionary instruction should be provided that explains to the jury that people decline to speak with police for many reasons, emphasizing that a defendant's invocation of his right to counsel or right to remain silent may not in any way be used to infer guilt." Ibid.

In Feaster, the Court determined the testimony concerning the defendant's invocation of his right to counsel occurred while questioning about the defendant's employment and not about the crimes for which he was being investigated and was later charged. Ibid. The Court found the testimony about the invocation of the right to counsel "did not purport to convey any information relevant to [the] defendant's involvement in the" crimes for which he was on trial. Ibid. The Court explained the trial court should have instructed the jury not to draw any unfavorable inferences from the defendant's invocation of the right to counsel. Ibid.

The Court, however, did not find that testimony, or the court's failure to provide a cautionary instruction, was clearly capable of producing an unjust result. Id. at 77. The Court noted that the reference to the defendant's invocation of his right to counsel was "fleeting," the prosecutor did not comment on the

invocation during summations, and the court's general charge that the jury could not "hold defendant's failure to testify against him . . . impart[ed] to the jury the respect to be accorded [the] defendant's decision to remain silent." Ibid.

Here, defendant argues trial counsel's performance was deficient by failing to object to the disputed testimony that was inadmissible under Feaster and Ruscingno. Defendant claims the testimony was inadmissible because it did not provide an explanation why the July 16, 2007 interview with defendant came to a logical end and, in any event, no explanation was necessary.

We find nothing in the record that would have supported the proper admission of the lieutenant's testimony about defendant's invocation of his right to counsel. Unlike in Ruscingno, the lieutenant did not describe defendant's invocation of his right to counsel to explain why the July 16, 2007 interview ended or to complete his description of the interview. 217 N.J. Super. at 471. Instead, he described defendant's request for a lawyer when asked why he did not discuss "the substance of the case" with defendant after the interview at the prosecutor's office ended and while he drove defendant home. We find no basis to conclude that omission of the testimony "would [have been] likely to mislead or confuse the jury," or that without the testimony, the jury would have been "naturally inclined to question why testimony regarding subsequent events," like

14

what was or was not discussed during the transport of defendant home, "was not offered." Feaster, 156 N.J. at 76. The testimony was simply unnecessary to address any issues upon which the jury might have otherwise speculated. Id. at 75-76.

Trial counsel should have objected to the testimony because it was inadmissible under the circumstances presented. And, even if the testimony was properly admitted, trial counsel should have requested an appropriate curative jury instruction. See ibid. We therefore conclude the PCR court erred by finding defendant did not make a prima facie showing trial counsel's performance was deficient, and defendant did not sustain his burden under the first prong of the Strickland standard. See State v. Hess, 207 N.J. 123, 155-60 (2011) (finding effective assistance of counsel requires that trial counsel challenge and object to inadmissible evidence).

The PCR court, however, correctly denied defendant's PCR petition because defendant failed to satisfy the second prong of the Strickland standard. Defendant failed to make any showing there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In fact, other than making a conclusory assertion trial counsel's purported errors result in prejudice,

defendant offers no argument or evidence establishing he suffered any prejudice under the second prong of the Strickland standard. See, e.g., State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999) (explaining a PCR petition "must do more than make bald assertions" and "must assert the facts" upon which the claims are based).

The record shows the challenged testimony was fleeting, the court generally instructed the jury on defendant's right to remain silent, and the prosecutor made no mention of defendant's request for an attorney during summations or at any other time during the trial. Thus, defendant stands in the same shoes as the defendant in Feaster, where the Court found under similar circumstances that fleeting testimony concerning the defendant's invocation of his right to counsel, which was unaccompanied by a specific cautionary jury charge, was not sufficiently prejudicial to warrant reversal of the defendant's conviction. Feaster, 156 N.J. at 77.

In addition, the evidence of defendant's guilt at trial, including the forensic DNA evidence; defendant's conflicting statements to the police about his involvement with J.W.; and H.L.'s testimony about the details of the murder he learned from defendant's admission he killed J.W., is substantial. See State v. Pierre, 223 N.J. 560, 583 (2015) (finding "[i]mportant to the prejudice analysis

A-0705-18T1

is the strength of the evidence that was before the fact-finder at trial").  Any claim of prejudice based on the lieutenant's statement that defendant requested a lawyer on July 16, 2007, is also undermined by the evidence showing defendant voluntarily appeared the next day and provided a second interview without the presence of counsel.

A petitioner must establish both prongs of the Strickland standard in order to obtain a reversal of the challenged conviction.  Strickland, 466 U.S. at 687; Nash, 212 N.J. at 542; Fritz, 105 N.J. at 52.  A failure to satisfy either prong of the Strickland standard requires the denial of a PCR petition.  Strickland, 466 U.S. at 700.  Thus, defendant's failure to satisfy the second prong of the Strickland standard required the denial of his PCR petition.

Defendant was also not entitled to an evidentiary hearing.  A defendant is not entitled to an evidentiary hearing where, as here, he fails to establish a prima facie case in support of post-conviction relief.  R. 3:22-10(b).  Where a PCR petition is founded on a claim of ineffective assistance of counsel, the defendant must satisfy the Strickland standard to establish a prima facie case in support of post-conviction relief.  Strickland, 466 U.S. at 668.  Because defendant failed to do so here, the PCR court correctly denied defendant's request for an evidentiary hearing.  See State v. Marshall, 148 N.J. 89, 158 (1997).

Our determination defendant failed to establish a prima facie case on the merits for his ineffective assistance of counsel claim renders it unnecessary to determine if the court correctly determined defendant's claim was barred under Rule 3:22-4(a). Any arguments made by defendant we have not expressly addressed are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0705-18T1